# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2326

_____

American Civil Liberties Union of    *
Minnesota,    *
   *
      Plaintiff - Appellee,    *
   *   Appeal from the United States
      v.    *   District Court for the
   *   District of Minnesota.
Tarek ibn Ziyad Academy; Islamic    *
Relief USA; Alice Seagren,    *
individually and in her capacity as    *
Minnesota Commissioner of    *
Education; Asad Zaman; Asif Rahman;    *
Mahrous Kandil; Mona Elnahrawy;    *
Moria Fahey; Mohamed Farid,    *
individually and in their capacities as    *
Directors of Tarek ibn Ziyad Academy,    *
   *
      Defendants,    *
   *
Javed Mohammad, as next friend of his    *
children M. Mohammad and    *
F. Mohammad; Ahmed Abuelyaman, as    *
next friend of his child I. Abuelyaman;    *
Abdu Tuku, as next friend of his    *
children Y. Tuku and E. Tuku; Adan    *
Mohamed, as next friend of his children    *
A. Issa, A. Issa, A. Issa, I. Issa and    *
A. Issa, who are all students at Tarek    *
ibn Ziyad Academy,    *
   *
      Movants - Appellants,    *

```
------------------------------------------          *
                                                    *
Minnesota Education Trust,                          *
                                                    *
         Objector.                                  *
                                                    *
```

_____

Submitted: February 17, 2011
Filed: July 7, 2011(Corrected: 07/12/2011)

_____

Before LOKEN, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

The American Civil Liberties Union of Minnesota (ACLU) sued public charter school Tarek ibn Ziyad Academy (TIZA) and other defendants for violations of the Establishment Clause. Parents of students who attend TIZA moved to intervene on behalf of their children, but the district court[1] held that the parents did not have standing and alternatively denied their motion as untimely. The parents appeal, and although we conclude that the parents have standing, we affirm the district court's denial of the parents' motion.

I.

TIZA, a public charter school formed under Minnesota Statute section 124D, seeks to provide an alternative educational environment directed at accommodating students with cultural ties to Africa, Asia, and the Middle East. The ACLU contends that the methods TIZA employs to accomplish its objective violate the Establishment

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

Clause of the United States and Minnesota Constitutions. The ACLU filed suit against TIZA on January 21, 2009, alleging that TIZA promotes or prefers the religion of Islam, pointing to, among other things, the suspension of classes for daily and weekly prayer, the serving of food in the school cafeteria in conformity with Islamic dietary restrictions, recognition of religious holidays on the school calendar, dress restrictions in conformity with Islamic rules, the permitting of religious materials being posted in school hallways and classrooms, and the providing of school transportation only after a religious studies program concludes in the afternoon.

On March 5, 2010, fourteen months after the action was commenced, parents of Muslim children who attend TIZA moved to intervene under Federal Rule of Civil Procedure 24, either as a matter of right under 24(a) or permissively under 24(b). The parents asserted that the First Amendment either permits or requires TIZA to provide the accommodations challenged by the ACLU as unconstitutional. The district court denied the parents' motion to intervene, holding that the parents did not have Article III standing because their alleged injuries were hypothetical. The district court further held that even if the parents did have standing, the motion to intervene was untimely. The parents appeal.[2]

II.

We first address whether the parents have Article III standing. Brown v. Medtronic, Inc., 628 F.3d 451, 455 (8th Cir. 2010) ("Federal courts must address questions of standing before addressing the merits of a case . . . ."); United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 833 (8th Cir. 2009) ("In our circuit, a

---

[2]The district court's order denying the parents' motion to intervene of right is immediately appealable as a final judgment. South Dakota ex rel. Barnett v. U.S. Dep't of Interior, 317 F.3d 783, 785 n.2 (8th Cir. 2003). Pendent appellate jurisdiction allows us to review the district court's order denying the parents' motion for permissive intervention. Id.

party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24."). We review the district court's standing determination de novo. Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006).

When a party opposes a motion to intervene on the basis of standing, the prospective intervenor must allege facts showing the familiar elements of Article III standing. Metro. St. Louis Sewer Dist., 569 F.3d at 834; Mausolf v. Babbitt, 85 F.3d 1295, 1301 (8th Cir. 1996). The prospective intervenor "must clearly allege facts showing an injury in fact." Metro. St. Louis Sewer Dist., 569 F.3d at 833-34. The prospective intervenor must also allege facts showing that the "alleged injury is fairly traceable to the defendant's conduct and that a favorable decision will likely redress the injury." Id. at 834. We must construe the motion to intervene in favor of the prospective intervenor, accepting all material allegations as true. Id. The parents have adequately alleged all three prongs of Article III standing.

First, the parents have alleged an injury in fact. An injury in fact means an invasion of a "legally cognizable right," Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009), that is "concrete, particularized, and either actual or imminent," Metro. St. Louis Sewer Dist., 569 F.3d at 833-34. The parents have identified a legally cognizable right because they contend their children's First Amendment right to the free exercise of religion would be infringed if TIZA discontinued the practices challenged by the ACLU. The ACLU responds that the parents could never be injured by the litigation because either the ACLU's claims will be dismissed, leaving the school practices intact, or the ACLU will prevail, requiring the school practices to be altered or discontinued because they are unconstitutional. Whatever the appeal of this argument, it is directed at the merits, and "although federal standing often turns on the nature and source of the claim asserted, it in no way depends on the merits of the claim." ASARCO, Inc. v. Kadish, 490 U.S. 605, 624 (1989) (internal quotation omitted).

-4-

The parents have also alleged facts showing that the injury is imminent.  They allege that if the ACLU wins on the merits, they will suffer an injury because TIZA will immediately stop providing them with constitutionally required religious accommodations.  See South Dakota v. Ubbelohde, 330 F.3d 1014, 1024-25 (8th Cir. 2003) (holding that prospective intervenors met the imminence requirement when they alleged that an injury would occur upon the success of the plaintiffs' lawsuit).

Second, the parents have alleged an injury fairly traceable to the defendant's conduct by asserting that if TIZA discontinues the practices challenged by the ACLU, their personal religious freedoms will be directly affected.  See McGowan v. Maryland, 366 U.S. 420, 429 (1961) (stating that plaintiffs must allege infringement of their own religious freedoms in order to have standing to bring a free exercise claim).  The ACLU responds that because the parents and TIZA seek the same outcome in the lawsuit, the parents must connect the alleged injury to the ACLU rather than to TIZA.  However, we have previously found intervenor standing in a procedurally analogous case.  In Ubbelohde, the Army Corps of Engineers planned to release water from a South Dakota reservoir into the Missouri River in order to maintain downstream river flow during a drought.  Ubbelohde, 330 F.3d at 1021. Several states filed suit in federal court seeking an injunction to prevent the Corps from releasing the water.  Id. at 1022.  Downstream landowners moved to intervene "based upon the fear that the Court's ruling would lead to decreased water flow downstream."  Id. at 1024.  We held that the landowners had standing to intervene even though their alleged injury—decreased water flow downstream—would be caused by the Corps' actions if the plaintiffs prevailed in the lawsuit.  Id. at 1025. Accordingly, when the defendant will be compelled to cause the alleged injury to the intervenor if the plaintiff prevails, the intervenor satisfies the traceability requirement even though the defendant and the intervenor seek the same outcome in the case.

Finally, the parents have shown redressability because the injury alleged—impingement of religious freedom if TIZA stops providing the

-5-

accommodations challenged by the ACLU—would be redressed by a judicial determination that the policies are permitted under the Establishment Clause. Accordingly, the parents have standing to intervene.

III.

The parents moved to intervene both as of right and permissively. Fed. R. Civ. P. 24(a), (b). Whether a person moves for "intervention of right" or for "permissive intervention," the motion must be timely. Fed. R. Civ. P. 24; see also NAACP v. New York, 413 U.S. 345, 365 (1973). We review the district court's timeliness determination for an abuse of discretion. United States v. Ritchie Special Credit Invs., 620 F.3d 824, 831 (8th Cir. 2010); see also NAACP, 413 U.S. at 365 ("[I]t is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review."). The district court abuses its discretion when it fails to consider a relevant factor that should have been given significant weight, considers an irrelevant or improper factor and gives it significant weight, or considers all the proper factors but commits a clear error of judgment in weighing those factors. Verizon Commc'ns, Inc. v. Inverizon Int'l, Inc., 295 F.3d 870, 873 (8th Cir. 2002) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984)) (describing in general the abuse-of-discretion standard of review). In addition, the district court abuses its discretion if it makes a legal error. Koon v. United States, 518 U.S. 81, 100 (1996) ("The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.").

Although the timeliness of a motion to intervene is a decision within the district court's discretion, Minn. Milk Producers Ass'n v. Glickman, 153 F.3d 632, 646 (8th Cir. 1998), and is based on all of the circumstances, we have articulated factors that the district court should specifically consider: (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's

knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties. Ritchie, 620 F.3d at 832; see also United States v. Union Elec. Co., 64 F.3d 1152, 1159 (8th Cir. 1995).

Here, the district court considered these factors and found that based on the circumstances, the motion was not timely. The court listed the relevant factors and acknowledged that timeliness is determined from all the circumstances. The court observed that even though the parents knew of the suit from its inception, they filed their motion to intervene fourteen months after the ACLU filed suit and more than a month after the deadline to add parties. The court emphasized that the parents offered no adequate explanation for the lengthy delay.[3] Finally, the court stated that the delay would prejudice the existing parties because they had already engaged in extensive motion practice, commenced written discovery, and begun taking depositions.

The parents contend that the district court abused its discretion by finding that the fact that extensive motion practice and some discovery had occurred during the

---

[3]The parents contend for the first time on appeal that the reason they delayed in intervening was, in part, that TIZA's insurance company assumed responsibility for defending TIZA in the case and replaced TIZA's original attorney "with counsel appointed and controlled by the insurance company." (Appellant's Opening Br. at 45.) The parents then wished to hire the attorney who originally represented TIZA because they believed the new attorney would be interested primarily in protecting the institutional and financial interests of the school rather than defending the school's operational practices. (Appellant's Reply Br. at 31.) We decline to address these arguments because they were not presented to the district court. Campbell v. Davol, Inc., 620 F.3d 887, 891 (8th Cir. 2010). We note, however, that counsel hired by an insurer to defend a claim against its insured represents the insured, Pine Island Farmers Coop. v. Erstad & Riemer, P.A., 649 N.W.2d 444, 449 (Minn. 2002) (en banc), and in fact, TIZA did not raise the Free Exercise Clause as a defense until after counsel chosen by the insurance company assumed representation of the school.

-7-

parents' delay in moving to intervene would prejudice the existing parties.[4]  The parents reason that because their legal theories arise from the same set of facts already in issue, their delay caused no prejudice to the existing parties despite the motion practice and discovery the parties had completed.  The introduction of a new legal theory, however, could change the parties' respective strategies or framing of the issues during preliminary motion practice as readily as separate factual circumstances could.  This is particularly true here, where although TIZA introduced the Free Exercise Clause defensively in its amended answer, the parents' respective claims of constitutional entitlement to TIZA's practices would require individualized legal inquiry.  See Harris v. McRae, 448 U.S. 297, 321 & n.24 (1980) (holding that a free exercise claim requires evidence showing how a particular state practice affects an individual in the practice of their religion).

In addition, when the discovery schedule is set, written discovery has commenced, and some depositions have been taken in a lawsuit, the addition of new parties often results in some prejudice to the existing parties, though perhaps slight here.  See League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1303-04 (9th Cir. 1997) (finding that the addition of a new party would inevitably delay the litigation and was prejudicial because of the long delay); Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 370 (3d Cir. 1995) (considering the amount of discovery that had occurred in assessing prejudice to existing parties).  We cannot say the district court abused its discretion in finding that the parents' delay would prejudice the existing parties.

---

[4]The parents also argue that "it is an abuse of discretion for a district court to deny intervention on timeliness grounds to otherwise qualified persons with significant rights at stake in the litigation unless their delay caused genuine prejudice to the parties." (Appellants' Opening Br. at 43.) We have consistently held, however, that the district court should consider all of the circumstances—no one factor is dispositive.  See, e.g., United States v. Ritchie Special Credit Invs., 620 F.3d 824, 831 (8th Cir. 2010).

Moreover, even absent any prejudice, the district court was free to conclude that given the progress of the litigation, the parents' knowledge of it, and the parents' failure to adequately explain the delay, the motion was untimely. See, e.g., Arrow v. Gambler's Supply, Inc., 55 F.3d 407, 409 (8th Cir. 1995) (holding that even if intervention would not prejudice existing parties, the progress of the litigation and intervenors' knowledge of it permitted the district court to find motion untimely); Ark. Elec. Energy Consumers v. Middle S. Energy, Inc., 772 F.2d 401, 403 (8th Cir. 1985) (affirming denial of motion to intervene on timeliness basis when the district court made no finding of prejudice but based decision on the other relevant factors).

Because the district court correctly stated the legal standard and considered all the relevant factors, we must find that the district court made a clear error of judgment in order to reverse. See Verizon Commc'ns, 295 F.3d at 873. It is evident that for fourteen months, the parents were content to remain aloof from this litigation and dependent on TIZA to adequately represent their interests despite their knowledge of the case and its progress. Under these circumstances, we cannot say the district court made a clear error of judgment in finding the motion untimely.

Finally, the ACLU filed a motion to supplement the record on appeal with developments in the factual record before the district court. Generally, we cannot consider evidence that was not contained in the record below when the district court rendered its decision. Allen v. U.S. Air Force, 603 F.3d 423, 433-34 (8th Cir.), cert. denied, 131 S. Ct. 830 (2010). Because the proffered material would not affect the outcome of the appeal, we deny the ACLU's motion. Rivera v. Reisch, 351 F. App'x 155, 156 (8th Cir. 2009) (unpublished per curiam) (denying motion to supplement the record where proffered material would not affect the outcome). The ACLU's motion to seal is also denied as moot.

IV.

We affirm the district court's denial of the parents' motion to intervene.

LOKEN, Circuit Judge, dissents from part III.

_____