# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1065
No. 12-1067
No. 12-1079
No. 12-1080
No. 12-1081
No. 12-1084
No. 12-1086
No. 12-1087
No. 12-1088
No. 12-1092
No. 12-1095

_____

Sr. Kate Reid, et al.

*Plaintiffs - Appellees*

v.

Doe Run Resources Corporation, a New York Corporation; D. R. Acquisition
Corp., a Missouri Corporation; Marvin K. Kaiser; Albert Bruce Neil; Jeffrey L.
Zelms; Theodore P. Fox, III; Daniel L. Vornberg; The Renco Group, Inc.; Renco
Holdings, Inc. , a New York Corporation; Ira L. Rennert

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 19, 2012
Filed: November 13, 2012

_____

Before MELLOY and BENTON, Circuit Judges, and BAKER,[1] District Judge.
_____

BENTON, Circuit Judge.

Doe Run Resources and its affiliates operated a smelting facility in Peru. The facility's pollution allegedly injured the plaintiffs. A Doe Run associate, Renco, is currently arbitrating related claims with Peru. The defendants sought both a mandatory and discretionary stay of this case pending the outcome of the arbitration. The district court[2] denied the motions. The defendants appealed. This court affirms.

I.

Plaintiffs, thirty-five children living near the smelting facility, allege that environmental contamination injured them. The children claim that the contamination was caused by the owners and operators of the facility, the defendants: Doe Run Resources Corporation, The Renco Group, Inc., related companies, and executives at those companies (collectively "Doe Run").

Before Doe Run's involvement, a state-owned company in Peru owned the facility. In 1997, Doe Run invested in, and later operated, the facility. The transaction occurred pursuant to a Stock Transfer Agreement (STA). Additionally, Peru separately guaranteed the obligations of the state-owned entity.

The children (along with others) originally sued in 2007, but voluntarily dismissed without prejudice. The children re-filed in 2008. In 2010, Renco filed a

_____

[1]The Honorable Kristine Gerhard Baker, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[2]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

notice to commence arbitration with Peru. Renco sought to compel Peru to step in and defend claims against Renco; indemnify, release, and hold Renco harmless in third-party actions; and remediate the land near the facility. Doe Run removed this case based on 9 U.S.C. § 205, which grants federal jurisdiction of any case that "relates to" a covered arbitration. The children moved for remand, which was denied.

Doe Run moved to stay the proceedings pending the outcome of the arbitration based on (1) 9 U.S.C. § 3 mandating a stay when the issues are "referable to arbitration"; and (2) the district court's discretionary authority over its own docket. The district court denied the motion. *A.O.A. v. Doe Run Res. Corp.*, No. 4:11CV44 CDP et al., 2011 WL 6091724 (E.D. Mo. Dec. 7, 2011). This interlocutory appeal followed.

## II.

The children object to subject matter jurisdiction. This court must independently determine, at any stage of the litigation, whether it has jurisdiction. *Hertz Corp. v. Friend*, ___ U.S. ___, 130 S. Ct. 1181, 1193 (2010); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006), *citing* **Fed. R. Civ. P. 12(h)(3)**. The children also argue that this court does not have pendent appellate jurisdiction over the discretionary-stay claim.

## A.

The parties agree that the arbitration agreement falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Doe Run removed this case under the Convention, which allows for removal "[w]here the subject matter of an action or proceeding . . . relates to an arbitration agreement or award falling under the Convention." **9 U.S.C. § 205**. The children contend that this suit does not "relate to" the arbitration.

The removal right in § 205 is "substantially broader" than that in the general removal statute. *Ensco Int'l, Inc. v. Certain Underwriters at Lloyd's*, 579 F.3d 442, 451 (5th Cir. 2009). This court has not interpreted "relates to" in § 205; only the Fifth and Ninth Circuits have done so. The Fifth Circuit held that an arbitration relates to a plaintiff's suit when the arbitration "could *conceivably* affect the outcome of the plaintiff's case." *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002). The Ninth Circuit agreed, noting that "[t]he phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes." *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011). The Fifth Circuit further expanded its definition to include cases having some "connection," "relation," or "reference" to the arbitration clause. *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 378-79 (5th Cir. 2006).

In other contexts, this court has embraced the broad nature of "relates to" language. *See, e.g.*, *United States v. Weis*, 487 F.3d 1148, 1152 (8th Cir. 2007), *quoting* *Morales v. Trans World Airlines Inc.*, 504 U.S. 374, 383 (1992) ("The phrase 'relating to' carries a 'broad' 'ordinary meaning,' i.e., 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . . .'"); *Estes v. Fed. Express Corp.*, 417 F.3d 870, 872 (8th Cir. 2005) ("Estes's state law claims are preempted if the claims 'relate to' an employee benefit plan, 29 U.S.C. § 1144(a), such that they [1] ha[ve] a connection with or [2] reference to such a plan." (alterations in original) (internal quotation marks omitted)); *Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc.*, 810 F.3d 782, 786 (8th Cir. 1987) ("For a proceeding to be 'related to' a bankruptcy case for purposes of bankruptcy jurisdiction, courts require that it have some effect on the administration of the debtor's estate." (internal quotation marks omitted)).

Joining the Fifth and Ninth Circuits, this court holds that a case may be removed under § 205 if the arbitration could conceivably affect the outcome of the case. Here, the issues in the arbitration could conceivably affect the outcome of this

-4-

case.  As the district court noted, the outcome of the arbitration could impact disputes at issue in this case, such as whether the pollution occurred when the defendants owned the facility, and whether the pollution caused children's injuries.  Also, depending on the outcome of the arbitration, Peru might be a party in this case.[3] While the children contend that the cases are completely independent and unrelated, either party could conceivably inject portions of the arbitration into this case.  For example, if the arbitration panel found Renco completely liable for all environmental damage and injuries, the children could conceivably introduce that finding.

The children assert that no federal jurisdiction exists because the arbitration panel's ruling will not have preclusive effect and is only a tangential focus of this case.  Their only support is *In re Conoco EDC Litigation*, 123 F. Supp. 2d 340, 341-42 (W.D. La. 2000), a district court case decided before *Beiser* and *Infuturia* (and is probably superceded by *Beiser*).  At any rate, no circuit has required that an arbitration be preclusive in order for jurisdiction to be proper under § 205.

This case was properly removed under § 205.

B.

The children argue that this court does not have appellate jurisdiction of the discretionary-stay claim.  The order denying the discretionary stay is neither a final judgment, nor an interlocutory order subject to appeal.  **28 U.S.C. § 1291**; **28 U.S.C. § 1292(a)**.  Doe Run asserts jurisdiction under 9 U.S.C. § 16(a)(1), because this order

---

[3]The children correctly note that they cannot be forced to sue Peru regardless of the outcome of the arbitration.  As they were not a party to the arbitration, they are not bound by its outcome.  *See* **Smith v. Bayer Corp.**, 131 S.Ct. 2368, 2379-81 (2011); **Taylor v. Sturgell**, 553 U.S. 880, 898-901 (2008).  Even if Peru is brought into the suit through third-party practice, however, that conceivably affects the outcome of this case.  *See* **Fed. R. Civ. P. 14(a)**.

"frustrate[s] attempts to resolve disputes through arbitration." *See **Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.***, 526 F.3d 38, 44 (1st Cir. 2008). That assertion, however, ignores the plain language of the statute, which grants appellate jurisdiction over specific orders. **9 U.S.C. § 16(a)(1)**. Additionally, *Sourcing Unlimited* analyzes jurisdiction in the context of a specific order under 9 U.S.C. § 16(a)(1)(C). 526 F.3d at 44.

"Pendent appellate jurisdiction is appropriate only in exceptional circumstances." ***Lockridge v. Bd. of Trs. of Univ. of Ark.***, 315 F.3d 1005, 1012 (8th Cir. 2003) (en banc) (citations omitted) (internal quotation marks omitted). This court has pendent appellate jurisdiction over claims that are "inextricably intertwined" with claims over which this court has appellate jurisdiction. ***Id.*** Claims are inextricably intertwined when resolution of the direct claim "necessarily resolves" the pendent claim. ***Id.***

The issues here are not inextricably intertwined. The question on the mandatory stay is whether the issues in this case are "referable to" arbitration. **9 U.S.C. § 3**. To evaluate a discretionary stay pending arbitration, courts weigh three factors: (1) the risk of inconsistent rulings; (2) the extent to which the parties will be bound by the arbiters' decision; and (3) the prejudice that may result from delays. ***AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.***, 242 F.3d 777, 783 (8th Cir. 2001). Whether the issues in this case are "referable to" arbitration may relate to the *AgGrow* factors, but the determination does not "necessarily resolve" the discretionary-stay claim.

Doe Run argues that this court previously exercised pendent appellate jurisdiction over a permissive motion to intervene when appellate jurisdiction over a mandatory motion to intervene was present. *See **ACLU of Minn. v. Tarek ibn Ziyad Acad.***, 643 F.3d 1088, 1092 n.2 (8th Cir. 2011). In *Ziyad*, however, this court did not analyze whether the claims were inextricably intertwined, but relied on this

court's *Barnett* opinion. ***Id.***, *citing* **South Dakota ex rel. Barnett v. U.S. Dep't of Interior**, 317 F.3d 783, 785 n.2 (8th Cir. 2003). Similarly in *Barnett*, this court did not analyze whether the claims were inextricably intertwined, but relied on an opinion from this court that does not discuss pendant appellate jurisdiction, and an opinion from the D.C. Circuit. **Barnett**, 317 F.3d at 785 n.2, *citing* **Curry v. Regents of Univ. of Minn.**, 167 F.3d 420, 422 (8th Cir. 1999) *and* **In re Vitamins Antitrust Class Actions**, 215 F.3d 26, 31 (D.C. Cir. 2000). In the D.C. Circuit's opinion, the court determined that the motions were inextricably intertwined because the "basis" for the motions was the same – a standard much different than this court's "necessarily resolves" standard. *See* **In re Vitamins**, 215 F.3d at 31. Moreover, this line of cases considers permissive interventions and not discretionary stays.

For this court to exercise pendent appellate jurisdiction, the prerequisite is clear: the resolution of the direct claim must necessarily resolve the pendent claim. **Lockridge**, 315 F.3d at 1012. Here, the resolution of the mandatory-stay claim does not necessarily resolve the discretionary-stay claim. This court may not exercise pendent appellate jurisdiction over the discretionary-stay claim.

III.

Doe Run argues that the district court erred by denying its motion for a mandatory stay pending the outcome of the arbitration. A district court's denial of a motion to stay pending arbitration under 9 U.S.C. § 3 is reviewed de novo. **Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.**, 516 F.3d 695, 698 (8th Cir. 2008). There is strong policy favoring arbitration, and doubts are resolved in favor of arbitration. *See* **Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.**, 473 U.S. 614, 638-39 (1985); **Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 24-25 (1983).

The Federal Arbitration Act requires a district court to issue a stay if an issue in the case is "referable" to arbitration. **9 U.S.C. § 3**, *made applicable to the Convention by* **9 U.S.C. § 208**. The children are nonsignatories to the arbitration agreement, but claims made by nonsignatories can be subject to a stay under 9 U.S.C. § 3. ***Donaldson Co. v. Burroughs Diesel, Inc.***, 581 F.3d 726, 732 (8th Cir. 2009).

In this case, Doe Run is seeking a stay, not an arbitration with the children.[4] Doe Run therefore believes that the court should be more inclined to grant the stay due to the strong policy favoring arbitration. *See* ***Hill v. GE Power Sys., Inc.***, 282 F.3d 343, 347 (5th Cir. 2002). "Section 3 of the Arbitration Act . . . is broad enough to permit the stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable to arbitration under an arbitration agreement governed by the Arbitration Act." ***Contracting Nw., Inc. v. City of Fredericksburg, Iowa***, 713 F.2d 382, 387 (8th Cir. 1983).

A nonsignatory attempting to bind a signatory to an arbitration agreement is distinct from a signatory attempting to bind a nonsignatory. ***Nitro Distrib., Inc. v. Alticor, Inc.***, 453 F.3d 995, 999 (8th Cir. 2006). "[A] willing signatory seeking to arbitrate with a *non*-signatory that is unwilling must establish at least one of the five theories described in *Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)." ***CD Partners, LLC v. Grizzle***, 424 F.3d 795, 799 (8th Cir. 2005), *quoting* ***Merrill Lynch Inv. Managers v. Optibase, Ltd.***, 337 F.3d 125, 131-32 (2d Cir. 2003). Those five theories are (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. ***Thompson-CSF***, 64 F.3d at 776.

Doe Run primarily argues that an estoppel theory mandates a stay. State contract law determines which claims are enforceable under § 3. ***Arthur Anderson***

---

[4]Even so, both parties discuss the leading cases seeking to compel arbitration as guidance for when an arbitration agreement will implicate a nonsignatory.

***LLP v. Carlisle***, 556 U.S. 624, 630-31 (2009). Missouri recognizes an estoppel theory where the party must directly benefit from the contract. ***Nitro Distrib., Inc. v. Dunn***, 194 S.W.3d 339, 348 (Mo. banc 2006).

Nonsignatories can be bound to an arbitration agreement when they directly benefit from the agreement. ***Thompson-CSF***, 64 F.3d at 776. The Fifth Circuit calls this "direct benefits estoppel" – a party can become bound to an agreement "(1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." ***Noble Drilling Servs. v. Certex USA, Inc.***, 620 F.3d 469, 473 (5th Cir. 2010). "Direct benefits estoppel applies when a nonsignatory knowingly exploits the agreement containing the arbitration clause." ***Bridas S.A.P.I.C. v. Gov't of Turkmenistan***, 345 F.3d 347, 361-62 (5th Cir. 2003) (citation omitted) (internal quotation marks omitted). The children are not direct beneficiaries of the terms of the agreement, but Doe Run argues that they benefitted from the agreement by invoking its terms throughout this case. The claims are so similar, Doe Run says, that they are "based upon the same operative facts" and are "inherently inseparable" from the claims in the arbitration. ***Hill***, 282 F.3d at 347.

According to Doe Run, the children's references to the STA throughout this case demonstrate their reliance on and benefit from the agreement. As the children and the district court properly noted, however, the children do not invoke the STA anywhere in their complaint. Moreover, the children referenced the STA for two limited purposes: to object to jurisdiction because their claims did not "relate to" the agreement; and to refute Doe Run's contention that it retained no liability due to the STA. The jurisdictional basis shows an attempt to *avoid* the agreement, not to benefit from it. The second purpose was to demonstrate that a case existed against the named

defendants, and as discussed below, did not result in the same claims being argued before two tribunals.[5]

Renco's arbitration seeks an order requiring Peru to, inter alia, step in and defend the claims against Renco; indemnify, release, and hold Renco harmless in third-party actions; and require Peru to remediate the land near the facility. Renco claims that Peru must indemnify it as to "nearly all claims by third parties." For Renco to have any liability, it believes that three preconditions must be met: (1) the third party's damages must have been exclusively attributable to Renco; (2) the claims must not arise from PAMA (a Peruvian environmental program designed to improve the quality of the land near the facility); and (3) Renco must have been using standards and practices less protective of the environment than the facility's previous owner. These three questions, therefore, will be the questions before the arbitration panel.

In this case, the children bring negligence, conspiracy, and strict liability claims against Doe Run,[6] based on its handling and disposing of metals at the facility. Some of the claims vary by defendant (such as failure to warn and negligent decision making). The strict liability claims allege an abnormally dangerous activity.

---

[5]The parties disagree about what material is properly before this court to demonstrate the children's references to the STA. Doe Run seeks to include examples from the 2007 litigation that the children voluntarily dismissed. These additional examples do not affect this court's holding. Therefore, even considering the additional material, the analysis and outcome are unaltered.

[6]Recall that "Doe Run" includes several individual defendants as well as Doe Run and Renco. The only claimant in the arbitration is Renco on its own behalf and on behalf of "Doe Run Peru." (Doe Run Peru is not a party to this case). While this alone does not prove the claims are separate – the claims could be identical even if the parties were not – it indicates that the issues in this case differ from those in the arbitration.

Renco asserts that both tribunals must determine the three preconditions at issue in the arbitration. A trier in this case, however, will decide only the theories pled in the complaint. These theories do not rely on the STA, do not turn on whether the claims arise from PAMA, and do not relate to the practices of the former facility operator. The question closest to overlapping, causation, will be sufficiently different as well. The arbitration panel will consider whether the damages are *exclusively* attributable to Renco. On the other hand, the trier in this case will consider whether each defendant sufficiently caused the children's injuries according to the applicable law. "The negligence of the defendant need not be the sole cause of the injury, as long as it is one of the efficient causes thereof, without which injury would not have resulted." *Hensley v. Jackson Cnty.*, 227 S.W.3d 491, 496 (Mo. banc 2007) (citation omitted).[7]

Doe Run is correct that this court must "look past the labels the parties attach to their claims to the underlying factual allegations." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008). The factual allegation underlying this case is that the defendants negligently operated the facility. The factual allegation underlying the arbitration is breach of contract: Renco alleges that Peru breached its duty to defend and indemnify. Courts frequently address indemnification in separate proceedings from those determining liability. *See, e.g.*, *Cremona, S.p.A. v. R.S. Bacon Veneer Co.*, 433 F.3d 617 (8th Cir. 2006). Renco asserts that the agreement provides more than mere indemnification because Peru also must step in and defend the claims. Even so, that fact affects damages in the breach of contract suit, but does not preclude the children from continuing this case.

---

[7]This quotation serves only to demonstrate the causation approach that applies in a normal negligence case (although this case may involve Peruvian law), as opposed to the unique question of exclusive causation before the arbitration panel. *See H&R Block Tax Servs. LLC v. Franklin*, 691 F.3d 941, 943 (8th Cir. 2012) ("Federal courts sitting in diversity apply the choice-of-law rules of the forum state."); *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. banc 1969) (adopting the most-significant-relationship test for tort cases).

The estoppel cases Doe Run cites contain a much closer nexus between the nonsignatory and the agreement with the arbitration clause. *See* **Blaustein v. Huete**, 449 F. Appx. 347, 350 (5th Cir. 2011) (explaining how the nonsignatory obtained tangible direct benefits from the terms of the agreement); **Graves v. BP America, Inc.**, 568 F.3d 221, 223-224 (5th Cir. 2009) (holding that a wrongful death suit must be made pursuant to the employment agreement – which contained an arbitration clause – because Texas law established that wrongful death suits are derivative of the decedent's rights and a workplace-injury suit would have been subject to arbitration); **American Bureau of Shipping v. Tencara Shipyard S.P.A.**, 170 F.3d 349, 353 (2d Cir. 1999) (holding that the nonsignatory received direct benefits, prior to litigation, from the agreement, including lower insurance rates and other maritime rights).

This court's decision in *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720 (8th Cir. 2001), is inapposite. There, the defendant, a *signatory* to the agreement, wanted to invalidate it because some of the plaintiff's partnerships were not signatories. **Dominium**, 248 F.3d at 728. Because the defendant-signatory had previously argued that those same partnerships were liable for failure to perform that very agreement, this court held it was inequitable to allow the defendant-signatory to claim there is no agreement. **Id.** In this case, Doe Run never alleged liability of the children under the STA, and Doe Run never attempted to invalidate the arbitration clause of the STA.

The issues in this case are not referable to arbitration. The district court properly denied a mandatory stay under 9 U.S.C. § 3.

IV.

This court holds that the issues in this case "relate to" the arbitration but are not "referable to" arbitration. As the district court correctly stated, the "relate to"

standard is "different and much lower than the question of whether the issues are 'referable to arbitration.'"

* * * * * * *

The order of the district court is affirmed.

_____