# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3261

_____

NCMIC Insurance Company

*Plaintiff - Appellee*

v.

Allied Professionals Insurance Company, a Risk Retention Group, Inc.

*Defendant - Appellant*

Charlotte Erdmann; Kristin M. Schantzen; Jay J. Schantzen; Valley Chiropractic Clinic, Ltd.

*Defendant*s

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 8, 2024
Filed: August 5, 2024

_____

Before COLLOTON, Chief Judge, SHEPHERD and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In this insurance coverage dispute, Allied Professionals Insurance Company (APIC) seeks to compel arbitration of NCMIC Insurance Company's (NCMIC)

declaratory judgment action. Proceeding under a theory of direct-benefits estoppel, APIC argued that NCMIC could be compelled to arbitrate because of a clause in APIC's insured's policy. Concluding that Minnesota law embraced only a limited version of direct-benefits estoppel under which APIC could not prevail, the district court[1] dismissed APIC's motion to compel arbitration. Having jurisdiction under 9 U.S.C. § 16(a), we affirm.

I.

Charlotte Erdmann is a massage therapist who was sued by a patient, Kristin Schantzen, and her husband, Jay, in Minnesota state court for injuries allegedly sustained by Kristin during a massage-therapy session. Erdmann was individually insured by APIC. Her employer, Valley Chiropractic Clinic (Valley), was separately insured by NCMIC. APIC and Erdmann tendered the patient's claims to NCMIC, but NCMIC declined to defend or indemnify Erdmann. Instead, NCMIC filed a declaratory judgment action against APIC, the Schantzens, and Erdmann. NCMIC sought, first, a declaration that it was not obligated to defend or indemnify Erdmann and, second, a declaration that if NCMIC's policy were found to cover Erdmann, the coverage was in excess of the primary coverage already provided by APIC's policy. While the declaratory judgment action was pending, the Schantzens settled with Erdmann and Valley. Erdmann agreed to pay $1.6 million, while Valley agreed to pay $250,000. It is undisputed that NCMIC must pay the $250,000 portion of the settlement. What remains in dispute is whether NCMIC or APIC must pay Erdmann's $1.6 million.

APIC moved for the district court to compel arbitration of that dispute, seeking enforcement of the following provision contained in its policy covering Erdmann:

---

[1]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota.

All disputes or claims involving [APIC] shall be resolved by binding arbitration, whether such dispute or claim arises between the parties to this Policy, or between [APIC] and any person or entity who is not a party to the Policy but is claiming rights either under the Policy or against [APIC].

APIC argued that, although NCMIC was not a party to the APIC-Erdmann policy, it could enforce the arbitration clause contained therein under a theory of direct-benefits estoppel, which typically "applies when a nonsignatory knowingly exploits the agreement containing the arbitration clause." Reid v. Doe Run Res. Corp., 701 F.3d 840, 846 (8th Cir. 2012) (citation omitted).

The district court denied the motion. It reasoned that Minnesota law, while never having expressly addressed the doctrine, would likely embrace a version of direct-benefits estoppel previously articulated by this Court in Reid: "Nonsignatories can be bound to an arbitration agreement . . . '(1) by knowingly seeking and obtaining "direct benefits" from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract.'" Id. (citation omitted).

Looking to the first prong under Reid, the district court observed that NCMIC never claimed to be a third-party beneficiary to the APIC-Erdmann policy, that the policy itself said that there are no intended third-party beneficiaries, and that NCMIC never argued that it was entitled to rights or benefits under the APIC-Erdmann policy. It therefore concluded that NCMIC did not seek to obtain a direct benefit under the policy.

Turning to the second prong, the district court noted that, since NCMIC sought a declaration that APIC's coverage is primary and that NCMIC's is excess, "it is literally true that the Court cannot determine the priority of coverage without referring to the terms of the APIC policy." Still, after explaining the concerning policy implications—NCMIC would be forced to arbitrate a claim against a defendant based on a clause in a contract it never signed—the district court held that

direct-benefits estoppel did not apply. The district court considered it significant that neither the Eighth Circuit nor the Minnesota Supreme Court had ever applied direct-benefits estoppel to a fact pattern such as this, wherein a defendant-signatory sought to enforce an arbitration clause in a contract against a plaintiff-nonsignatory. APIC now appeals the denial of its motion.

II.

Direct-benefits estoppel is a kind of equitable estoppel. See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 417-18 (4th Cir. 2000). The "application of equitable estoppel presents at least mixed questions of law and fact," which we "review[] de novo." Donaldson Co. v. Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009). The use of equitable estoppel to compel arbitration is a matter of state contract law. Id. at 732 (citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009)). Therefore, the threshold issue for us upon de novo review is whether Minnesota law embraces a doctrine of estoppel that allows a defendant-signatory such as APIC to compel an unwilling plaintiff-nonsignatory such as NCMIC to arbitrate its claims.

Minnesota courts have never expressly adopted the doctrine of direct-benefits estoppel. Accordingly, we must predict how (or indeed if) the Minnesota Supreme Court would apply the doctrine. Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010) ("This court is bound by decisions of the highest state court when interpreting state law. If the highest state court has not decided an issue we must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority." (citation omitted)).

The closest the Minnesota Supreme Court has come in addressing the doctrine is in Onvoy, Inc. v. SHAL, LLC, 669 N.W.2d 344 (Minn. 2003). There, the court explained that, "[g]enerally, arbitration clauses are contractual and cannot be enforced by persons who are not parties to the contract." Id. at 356. It noted, however, that "[t]here are exceptions to the rule" and that "[f]ederal cases have set

-4-

out at least three principles on which a nonsignatory to a contract can compel arbitration" including "equitable estoppel." Id. That doctrine, the court explained, "prevents a signatory from relying on the underlying contract to make his or her claim against the nonsignatory." Id. But the court stopped short of applying equitable estoppel and remanded to the district court, instructing it to consider the doctrine if it first found that SHAL could compel arbitration and other individual defendants were not agents of SHAL. Id. at 357. Significantly, however, the court cited two authorities for the foregoing exposition: MS Dealer Service Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999), abrogated on other grounds by Carlisle, 556 U.S. at 631, and Gabriel M. Wilner, Domke on Commercial Arbitration § 10 (2d ed. 1999).[2]

In MS Dealer, the Eleventh Circuit explained the circumstances in which "equitable estoppel allows a nonsignatory to compel arbitration." 177 F.3d at 947 (citation omitted). It did not address the fact pattern before us, however, wherein a *signatory* attempts to compel a *nonsignatory* to arbitrate its claims. But the Wilner treatise did, explaining that "even though arbitration is contractual by nature, a nonsignatory to an arbitration agreement may nonetheless be bound by the agreement under an accepted theory of agency or contract law." Wilner, supra, § 10.00. For that proposition, the Wilner treatise cited Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir. 1995). There, the Second Circuit explained that the court had previously "bound nonsignatories to arbitration agreements under an estoppel theory" when the nonsignatory "*directly* benefitted from the" agreement containing the arbitration clause—i.e., direct-benefits estoppel. Id. at 778-79.

---

[2]We note that, strictly speaking, the Minnesota Supreme Court cited "Gabriel M. Wilner, Domke on Commercial Arbitration . . . (1983)." Because the second edition was current at the time of Onvoy, and because the pagination of that edition aligns with the Minnesota Supreme Court's citations, we refer to the second edition throughout our opinion.

The Second Circuit also identified "an alternative estoppel theory"—virtually identical to <u>Reid</u>'s second prong—whereby

> a signatory was bound to arbitrate with a nonsignatory at the nonsignatory's insistence because of "the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were 'intimately founded in and intertwined with the underlying contract obligations.'"

<u>Id.</u> at 779 (alteration in original) (citations omitted). However, the Second Circuit explained that this alternative theory of estoppel was only applicable in cases where a *signatory* was being estopped from avoiding arbitration. <u>Id.</u> In other words, according to <u>Thomson-CSF</u>, a *nonsignatory* can only be compelled to arbitrate by a signatory under an estoppel theory based on the nonsignatory directly benefitting from the agreement containing the arbitration clause, and not the "alternative estoppel theory" premised on the claims being "intimately founded in and intertwined with the underlying contract obligations." <u>Id.</u> (citation omitted).

We therefore predict that, when faced with a defendant-signatory's attempt to compel a plaintiff-nonsignatory to arbitrate its claims, the Minnesota Supreme Court would embrace, at most, the version of direct-benefits estoppel articulated in <u>Thomson-CSF</u>: APIC can compel NCMIC to arbitrate only if NCMIC "*directly benefitted*" from the APIC-Erdmann policy. 64 F.3d at 779. This is, in effect, to ask a similar question as posed in the first prong of <u>Reid</u>, namely, whether the nonsignatory "knowingly s[ought] and obtain[ed] 'direct benefits' from" the contract. <u>Reid</u>, 701 F.3d at 846 (citation omitted). We therefore conclude that the Minnesota Supreme Court likely would not embrace the version of direct benefits estoppel announced in the second prong of <u>Reid</u>, which binds nonsignatories when they "seek[] to enforce the terms of th[e] contract or assert[] claims that must be determined by reference to th[e] contract." <u>Id.</u> (citation omitted).

This prediction is bolstered by nonbinding but persuasive Minnesota authorities. First, we note that two concurring Justices of the Minnesota Supreme Court expressed skepticism in <u>Onvoy</u> when it came to the enforcement of arbitration clauses against unwilling nonsignatories. See <u>Onvoy</u>, 669 N.W.2d at 358-59 (Anderson, J., concurring) ("[S]ound[ing] a note of caution to courts that when a right as fundamental as the right of access to the courts and trial by jury is at stake, waiver of that right is not to be lightly presumed."); <u>id.</u> at 361-62 (Gilbert, J., concurring in part and dissenting in part) ("To enforce the arbitration clause in our case, the majority cites several federal circuit court decisions relating to equitable estoppel . . . . In doing so, the majority constructs a line of reasoning that effectively nullifies the constitutional rights of citizens by restricting their access to our courts to adjudicate claims.").

Second, the Minnesota Court of Appeals, considering a near-identical fact pattern to that underlying this appeal, and applying <u>Onvoy</u> and the Wilner treatise, rejected the application of direct-benefits estoppel. <u>St. Paul Fire & Marine Ins. Co. v. API, Inc.</u>, No. A04-204, 2004 WL 2161181, at *4 (Minn. Ct. App. Sept. 28, 2004) (holding that the trial court did not err in denying a signatory-insurer's motion to compel arbitration of an insured's claims because the insured was not a signatory to the contract containing the arbitration clause). Although <u>St. Paul Fire</u> might suggest that the Minnesota Supreme Court would not adopt any version of direct-benefits estoppel on these facts, see <u>Progressive</u>, 608 F.3d at 390 (decisions of intermediate state appellate courts are persuasive authority absent a decision of the state's highest court), it was designated as unpublished and is therefore not precedential, <u>Dynamic Air, Inc. v. Bloch</u>, 502 N.W.2d 796, 800 (Minn. Ct. App. 1993) ("Unpublished opinions of the Court of Appeals are not precedential. At best, these opinions can be of persuasive value."). We therefore consider this decision as bolstering our limited conclusion, rather than dictating a stronger one.

Because we predict that the Minnesota Supreme Court would embrace, at most, the version of direct-benefits estoppel articulated in <u>Thomson-CSF</u>, this case turns on whether NCMIC directly benefitted from the APIC-Erdmann policy. Recall

-7-

that the district court held that NCMIC did not seek a direct benefit: NCMIC never claimed to be a third-party beneficiary to the APIC-Erdmann policy; the policy stated that there are no intended third-party beneficiaries; and NCMIC had not argued that it was entitled to rights or benefits under the policy.

APIC does not dispute these conclusions on appeal. Rather, it argues that, "[w]hile NCMIC is not seeking a direct payment from APIC, it is nonetheless seeking to directly benefit from the application of" the APIC-Erdmann policy—without which "NCMIC would be responsible to indemnify Erdmann." But this argument contorts the meaning of a "direct benefit" and APIC concedes as much when it states that this benefit is "not 'direct' in the traditional sense." Moreover, we have rejected this argument in similar circumstances. In Nitro Distributing, Inc. v. Alticor, Inc., we analyzed whether plaintiff-nonsignatory businesses could be bound to arbitrate their claims by the defendant-signatory multinational company under a theory of estoppel. 453 F.3d 995, 998 (8th Cir. 2006). We rejected the defendant-signatories' contention that "benefitting in general" from a distribution agreement is the same as "directly benefitting" from it. Id. APIC asks us to draw the same equivalence here, and we decline to do so. For the foregoing reasons, and because APIC offers us no other reason to disturb the district court's conclusions on this point, we conclude that NCMIC did not directly benefit from the APIC-Erdmann policy. Accordingly, we conclude that, under Minnesota law, APIC cannot compel NCMIC to arbitrate its claims under a theory of direct-benefits estoppel.

In so holding, we need not reach the district court's analysis and APIC's arguments concerning the second Reid prong. As explained, we predict that the Minnesota Supreme Court would not embrace that version of direct-benefits estoppel. Granted, we have previously stated that "Minnesota appears to follow federal law regarding equitable estoppel," but we did so when faced with the reverse fact pattern, wherein a defendant-nonsignatory sought to compel arbitration of a plaintiff-signatory's claims. In re Wholesale Grocery Prods. Antitrust Litig., 707 F.3d 917, 922-24 (8th Cir. 2013) (explaining that plaintiff-signatory retailers sought to bring claims against defendant-nonsignatory wholesaler and determining whether

"equitable estoppel permits the non-signatory Wholesaler to compel arbitration"). Faced with a novel fact pattern and correspondingly novel legal issue, we are not bound by this language from Wholesale Grocery. See Sanzone v. Mercy Health, 954 F.3d 1031, 1039-40 (8th Cir. 2020) (explaining that "[t]ypically, *stare decisis* requires this court to follow the opinions of prior panels" but that "when an issue is not squarely addressed in prior case law, we are not bound by precedent through *stare decisis*" (citation omitted)).

### III.

For the foregoing reasons, we affirm the judgment of the district court.

STRAS, Circuit Judge, concurring in the judgment.

I agree that the Minnesota Supreme Court would not force parties into arbitration just because their claims "refer[]" to contracts they never signed. *Ante* at 6 (quoting *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012)). But it is not clear to me that direct-benefits estoppel is even a legitimate equitable doctrine, much less that any court in Minnesota would adopt it.

For one thing, the Minnesota Supreme Court has already expressed its skepticism. Observing that it comes from "[f]ederal cases," not "Minnesota courts," and that the trial court may not need to address it on remand, was hardly a ringing endorsement. *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 356–57, 356 n.12 (Minn. 2003). For another, this sort of "estoppel" has nothing to do with the traditional equitable doctrine that Minnesota courts apply. *Compare, e.g.*, *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 360–61 (5th Cir. 2003) (justifying so-called "equitable estoppel" based on what "makes sense" and policy concerns about parties trying "to have it both ways" (citation omitted)), *with N. Petrochemical Co. v. U.S. Fire Ins. Co.*, 277 N.W.2d 408, 410 (Minn. 1979) (listing the classic elements: "representations or inducements," "reasonabl[e] reli[ance]," and "harm[] if the claim of estoppel is not allowed"). Equity has a rich history, including in Minnesota, and

-9-

it is telling that direct-benefits estoppel is a recent federal invention that bears little resemblance to longstanding equitable doctrines.  My best (educated) *Erie* guess is that Minnesota courts will want nothing to do with it.

_____