# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 09-2528

_____

United States of America,           *
                                     *
        Plaintiff - Appellee,        *
                                     *
    v.                               *
                                     *
Ritchie Special Credit Investments,  *
Ltd.; Rhone Holdings II, Ltd.;       *   Appeal from the United States
Yorkville Investments I, LLC; Ritchie *   District Court for the
Capital Structure Arbitrage Trading, *   District of Minnesota.
Ltd.; Ritchie Capital Management,    *
LLC,                                 *
                                     *
        Movants - Appellants,        *
                                     *
Thomas Joseph Petters, dba Petters   *
Company, Inc., dba Petters Group     *
Worldwide, LLC, dba PCI; Deanna      *
Coleman, also known as Deanna        *
Munson; Robert White; James          *
Wehmhoff; Larry Reynolds, dba        *
Nationwide International Resources,   *
also known as NIR; Michael Catain,   *
dba Enchanted Family Buying          *
Company; Frank E. Vennes, Jr., dba   *
Metro Gem Finance, dba Metro Gem     *
Inc., dba Grace Offerings of Florida *
LLC, dba Metro Property Financing,   *
LLC, dba 38 E. Robinson, LLC, dba    *
55 E. Pine, LLC, dba Orlando Rental  *
                                     *

Pool, LLC, dba 100 Pine Street            *
Property, LLC, dba Orange Street          *
Tower, LLC, dba Cornerstone Rental        *
Pool, LLC, dba 2 South Orange             *
Avenue, LLC, dba Hope Commons,            *
LLC, dba Metro Gold, Inc.,                *
                                          *
        Defendants - Appellees,          *
                                          *
Allen J. Munson,                          *
                                          *
        Movant - Appellee,               *
                                          *
Minnwest Bank M.V.; Minnwest              *
Bank Metro,                               *
                                          *
        Intervenors - Appellees,         *
                                          *
Douglas Arthur Kelley,                    *
                                          *
        Receiver - Appellee,             *
                                          *
Gary Hansen,                              *
                                          *
        Receiver - Appellee.             *

_____

Submitted: May 11, 2010
Filed: September 2, 2010
_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.
_____

SMITH, Circuit Judge.

Ritchie Special Credit Investments, Ltd., *et al.* (collectively, "Ritchie") twice sought to intervene into an adversary proceeding initiated by the government pursuant to 18 U.S.C. § 1345 against Minnesota businessman Thomas J. Petters, certain businesses that Petters owned, including Petters Group Worldwide, LLC, (PGW), and other individuals. The § 1345 action alleged that Petters and his associates orchestrated an extensive and long-running Ponzi scheme.[1] The government obtained a temporary restraining order freezing assets, and shortly thereafter Petters stipulated to a preliminary injunction freezing assets, appointing a receiver, and staying litigation against Petters and his corporations and all subsidiaries. Ritchie alleges that it is a secured creditor of Petters's businesses with security interests in certain of the restrained assets. Ritchie attempted to appoint its own receiver in its first motion to intervene but did not directly challenge the injunction. In Ritchie's second motion to intervene—the subject of this appeal—Ritchie challenged the receivership and asset freeze orders. The district court[2] denied Ritchie's second motion to intervene, finding it untimely and that sufficient evidence supported the injunction.

---

[1]A Ponzi scheme is

> [a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, usually without any operation or revenue-producing activity other than the continual raising of new funds. This scheme takes its name from Charles Ponzi, who in the late 1920s was convicted for fraudulent schemes he conducted in Boston.

Black's Law Dictionary 1198 (8th ed. 2004).

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

Ritchie makes three arguments on appeal: (1) the district court abused its discretion in finding Ritchie's motion untimely because Ritchie had proper justification for any delay, the litigation had not progressed to a point whereby intervention would be unfeasible, and Ritchie—not the government—would be prejudiced by denying the motion when Ritchie could not adequately protect its security interests in bankruptcy court; (2) the district court violated Ritchie's due process rights by denying the motion; and (3) the injunction lacks evidentiary support as it pertains to PGW and its subsidiaries, and the district court erred in preventing Ritchie to intervene to challenge the injunction on those grounds. For the reasons stated below, we affirm.

## I. *Background*
### A. *The Indictment*

This case arises from the government's use of the anti-fraud injunction statute,[3] § 1345, to preserve assets for the benefit of the victims of allegedly the second-largest Ponzi scheme in this country's history, with fraud proceeds in excess of $3.5 billion.[4] Following an investigation into this scheme, Petters and two of his companies, PGW and Petters Company, Inc. (PCI), were indicted for mail fraud, wire fraud, conspiracy, and money laundering. Petters individually was tried by jury and convicted on all counts on December 2, 2009.

The indictment charged that PCI and PGW "did knowingly devise and participate in a scheme and artifice to defraud and to obtain billions of dollars in

---

[3]This statute, sometimes called the Fraud Injunction Statute, permits the government to commence a civil action to enjoin ongoing violations of certain specific federal fraud statutes and to freeze assets and appoint a temporary receiver to administer the restraining order. *See* 18 U.S.C. § 1345.

[4]*See* David Phelps and Dan Browning, *Tom Petters: 50 Years in Prison, "Largest Fraud in Minnesota History,"* Minneapolis Star Tribune, April 9, 2010, at A1.

money and property by means of materially false and fraudulent pretenses, representations, and promises" and that "PGW and its agents made numerous false statements, false representations and material omissions to fraudulently induce investors to provide defendants PCI and PGW with billions of dollars."

### B. *Ritchie's Involvement*

The Ritchie appellants are all entities among the many creditors of Petters, PCI, and PGW. Ritchie alleges that it holds several security interests in Polaroid and another wholly-owned Petters subsidiary, Petters Capital, LLC ("Petters Capital"), worth approximately $225 million. By a series of promissory notes made between February 1, 2008, and February 19, 2008, Petters and PGW borrowed $152 million from Ritchie. On May 9, 2008, Ritchie made additional loans to Petters, PGW, and PCI in the principal amount of $12 million, evidenced by two promissory notes (together with the February notes, the "Ritchie notes").

On September 19, 2008, Ritchie and the borrowers extended the due date of the Ritchie notes to December 19, 2008, and reduced the interest rate. Polaroid and Petters Capital pledged certain assets to secure the new debt terms: Polaroid delivered a security agreement pledging Polaroid trademarks in Brazil, India, and China and the proceeds and products thereof, and Petters Capital pledged secured and unsecured promissory notes from Polaroid in the face amount of $135 million. The Petters Capital notes were secured by Polaroid's assets. These liens and interests are now in dispute in a pending bankruptcy action. *Polaroid v. Ritchie Capital Mgmt.*, Adv. No. 09-ap-04032 (Bankr. Minn. Feb. 12, 2009).

On September 26, 2008, after details of a federal investigation into the Petters Ponzi scheme became known, Ritchie served its Petters-associated borrowers with a notice of default that declared all outstanding amounts on the Ritchie notes immediately due and payable and shortly thereafter brought a state court action in Illinois against Petters, PGW, and PCI ("the Illinois action") to enforce the Ritchie

notes. In the Illinois action, Ritchie and other Petters creditors obtained orders entered September 30, 2008, and October 3, 2008, freezing the assets of PGW and PCI and appointing a receiver—William Procida—of the assets of those entities.

## C. *The Injunction*

On October 2, 2008, the government initiated this action by filing a civil complaint under § 1345 to prevent the dissipation of assets by Petters, PGW, PCI, and others involved in the Ponzi scheme. The district court issued several orders under § 1345 that operated, in relevant part, to: (1) freeze the assets of Petters, PGW, PCI and all entities owned or controlled by them; (2) appoint Douglas A. Kelley as receiver of PGW, PCI, and their related entities, including Polaroid; and (3) stay all litigation against the covered entities.

On October 6, 2008, the government and Petters, individually and as 100 percent owner of PCI and PGW, stipulated to entry of the district court's orders (collectively, "injunction"), which froze Petters's assets and appointed Kelley as receiver of those assets. FBI Special Agent Eileen Rice supported the injunction motion with an affidavit. Agent Rice's investigation included "the execution of numerous search warrants for documents, records, and proceeds from illegal activities, and . . . the subsequent investigation and analysis of evidence seized pursuant to these warrants." Agent Rice's affidavit outlined a scheme whereby Petters, along with employees of PCI and other Petters entities, induced investors to provide financing to PCI based on fictitious documents that Petters's associates prepared. The documents purported to purchase merchandise for PCI, which PCI would then resell. In reality, no merchandise was purchased, and instead the money that Petters raised through PCI was used for his other business ventures and to support his extravagant lifestyle.

The enjoined assets became subject to a receivership that Kelley directed. The scope of the receivership included, inter alia, the corporate assets of PGW and PCI, as named defendants, as well as Polaroid. The injunction also imposed a stay of

litigation against the named defendants, including Polaroid, and the receivership assets. The injunction gave Kelley broad powers to take possession of and manage the assets of Petters, PGW, PCI, and other individual and corporate defendants; liquidate and sell assets; and assume control of and manage ongoing businesses. Kelley was also given specific authority to file bankruptcy petitions to preserve assets. The injunction stated that "[a]ny bankruptcy cases so commenced by the Receiver shall during their pendency be governed by and administered pursuant to the requirements of the United States Bankruptcy Code, 11 U.S.C. section 101 et seq., and the applicable Federal Rules of Bankruptcy Procedure."

Ritchie alleges that neither the stipulation nor the injunction including PGW was based on any new admissible evidence about PGW or its subsidiaries. Ritchie therefore challenges the addition of PGW (with its subsidiaries Petters Capital and Polaroid) to the scope of the injunction, alleging that the court added PGW without the evidentiary showing that § 1345 requires. To support its contention, Ritchie notes that the injunction contains nine findings of fact, but none mention PGW, Petters Capital, or Polaroid. Instead, the findings recite that there is probable cause to believe that "certain Defendants" have committed the fraud described in § 1345.

### D. *Ritchie's First Motion to Intervene*

Ritchie first moved to intervene in this action on October 7, 2008, immediately after Petters stipulated to entry of the injunction. Ritchie asked the district court to defer to the Illinois court as a matter of comity. Ritchie *did not* then challenge the factual basis for the district court's § 1345 orders, Petters's authority to stipulate to the orders, or the appointment of a receiver. Ritchie argued that it should be allowed to intervene to seek appointment of Procida (the Illinois action receiver) as receiver for both PGW and PCI because Ritchie had a substantial interest in the litigation and because Kelley was not qualified to maximize the potential recovery for PGW's and PCI's creditors. On October 9, 2008, the district court denied Ritchie's motion to intervene, stating that "[n]o showing has been made that the Court appointed Receiver

-7-

will not adequately represent the interests of all victims of the alleged fraud scheme." Ritchie did not appeal. On October 10, 2008, the Illinois circuit court ruled that its September 30, 2008, and October 3, 2008, orders had expired and were of no effect, ending Illinois's interest in the case.

### E. *The Bankruptcies*

On October 11, 2008, Kelley filed for Chapter 11 bankruptcy relief for PCI, PGW, and certain related Petters entities. The bankruptcy court appointed Kelley as the Chapter 11 trustee of PGW and PCI. Ritchie objected to Kelley's appointment as trustee, arguing that Kelley's role as a receiver, charged with obtaining maximum recovery for fraud victims, posed a conflict of interest with the role of a trustee, charged with protecting creditors' interests. Ritchie further argued that Kelley's dual service as trustee for both PGW and PCI also presented a conflict due to the likelihood of cross claims running between the two bankruptcy estates. The bankruptcy court overruled Ritchie's objections, finding that no conflict existed at the time and that any future conflicts could be addressed if and when they arose. According to the court, there was no indication in the record that Kelley had ever taken any action that was self-interested, contrary to the interests of the bankruptcy estates, or in any way inconsistent with the obligations of a fiduciary steward of the estates. Accordingly, the bankruptcy court approved Kelley's appointment as Chapter 11 trustee for both PGW and PCI. PGW and PCI each scheduled the Ritchie claims as disputed in the bankruptcy proceedings.

Ritchie appealed that order to the district court. On September 8, 2009, the district court affirmed the bankruptcy court's decision to appoint Kelley as Chapter 11 trustee and to authorize him to secure and hold assets. In so doing, the district court noted that Kelley's obligations did not give rise to an adverse interest that would prevent him from serving as a Chapter 11 trustee and emphasized that there was no present justification for separate bankruptcy trustees for the interests of PGW and PCI.

On December 18, 2008, Polaroid filed for Chapter 11 bankruptcy relief. Because Polaroid's executive management remained intact, Polaroid CEO Mary Jeffries executed the bankruptcy petition and no trustee was needed. Polaroid became a Chapter 11 debtor-in-possession (DIP). Pursuant to its powers as a DIP, Polaroid filed an adversary proceeding under 28 U.S.C. § 157 against Ritchie in the bankruptcy case, seeking to avoid Ritchie's liens as fraudulent and preferential transfers. This particular adversary proceeding is pending. *See, supra*, *Polaroid v. Ritchie Capital Mgmt.*, Adv. No. 09-ap-04032 (Bankr. Minn. Feb. 12, 2009).

Polaroid was offered for sale in March 2009, and Ritchie objected. Following an auction, the bankruptcy court approved a sale of Polaroid's assets for $87 million. *See In re Polaroid Corp.*, ___ F.3d ____, 2010 WL 2696748, at *1 (8th Cir. July 9, 2010) (per curiam). The order approving the sale expressly states that any liens of parties, such as Ritchie, remain because those liens attach to the proceeds of the sale "with the same validity, priority and effect and to the same extent that existed immediately prior to the consummation of the Sale and in all cases subject to any and all rights, claims and defenses that the Debtors may have with respect thereto."

### F. *Ritchie's Second Motion to Intervene*

On March 23, 2009, pursuant to Federal Rule of Civil Procedure 24, Ritchie filed a second motion to intervene in the § 1345 action against Petters and sought to challenge the underlying factual support for the injunction. Ritchie sought to intervene for the purpose of asking the district court to vacate the injunction restraining the assets of PGW and to remove PGW and Polaroid from the receivership. Ritchie, in moving to intervene as of right to challenge the injunction as to PGW and its subsidiaries, argued that Kelley was actively opposing, rather than representing, Ritchie's interests and that the asset freeze and receivership orders were improper as to PGW and its subsidiaries because the government had offered no evidence that (1) PGW or its subsidiaries were engaged in or about to commit fraud; (2) PGW or its

subsidiaries were alienating or disposing of property; or (3) PGW or its subsidiaries were assets traceable in any way to the alleged fraud.

The government opposed Ritchie's motion, arguing that Ritchie in actuality issued the entire loan proceeds to PCI—not PGW—and just "papered" the loans as loans to PGW and that Polaroid and Petters Capital received no consideration to justify the security interests they pledged so that Ritchie was not a secured creditor of PGW or its subsidiaries. The government contended that the injunction was justified because PGW was "property of equivalent value" to property derived from fraud.

Finally, the government presented new information in the form of an affidavit from Kelley to suggest that the purchase of Polaroid by PGW was funded by "dirty money," i.e., funds PCI had obtained from fraud victims. The government ultimately argued that the injunction was proper to restrain PGW and its subsidiaries.

On April 29, 2009, the district court denied Ritchie's second motion to intervene, finding it untimely because (1) Ritchie knew about the injunction from its inception; (2) Ritchie did not show "changed circumstances" from its earlier motion to intervene because "Ritchie does not identify any change in the quality or quantity of proof supporting the issuance of the Injunction"; and (3) the creditors who have invested much time into the Polaroid bankruptcy proceeding would be prejudiced if Ritchie were permitted to intervene to challenge the injunction. The district court also found that Ritchie could protect its security interests and liens in the Polaroid and Petters Capital bankruptcy court proceedings.

The court also noted that there was sufficient evidence, including but not limited to Petters's stipulation and the superseding indictment, to justify imposition of the § 1345 receivership and litigation stay. The district court found that "the entry of the injunction in this case was not based solely on the Stipulations by the

Defendants, but also upon a substantial showing that the Injunction and its scope were properly justified under § 1345."

## II. *Discussion*

Ritchie makes three arguments on appeal: (1) the district court abused its discretion in finding Ritchie's motion untimely because Ritchie had proper justification for any delay, the litigation had not progressed to a point whereby intervention would be unfeasible, and Ritchie—not the government—would be prejudiced by denying the motion if Ritchie could not adequately protect its security interests in bankruptcy court; (2) the district court violated Ritchie's due process rights by denying the motion; and (3) the injunction lacks evidentiary support as it pertains to PGW and its subsidiaries and the district court erred in denying Ritchie permission to intervene to challenge the injunction on those grounds.

### A. *Timeliness*

Ritchie first argues that its motion to intervene was timely under Eighth Circuit common law principles. Ritchie concedes that in some circumstances the six-month delay between the entry of the injunction and the filing of the second motion to intervene would constitute an untimely filing. Ritchie maintains, however, that changed circumstances legally justified the delay.

The government responds that the litigation has progressed substantially and with Ritchie's active participation, rendering Ritchie's new motion untimely. Additionally, the government asserts that Ritchie has not shown that it will be harmed if not allowed to intervene and none of Ritchie's rights have been impaired. The government also argues that Ritchie has an adequate remedy to protect its interests in bankruptcy court.

The timeliness of a motion to intervene is reviewed under an abuse-of-discretion standard. *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d

994, 998 (8th Cir. 1993). We "construe Rule 24 liberally and resolve any doubts in favor of the proposed intervenors." *Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assoc., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995) (internal citation omitted). "At the same time, a district court's exercise of discretion under the rule should not lightly be overturned." *Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 404 (8th Cir. 1985).

Intervention as of right is governed by Rule 24(a)(2), which provides:

(a) Intervention of Right. *On timely motion*, the court must permit anyone to intervene who . . .

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(Emphasis added.)

The issue of the timeliness of a motion to intervene is a threshold issue. *NAACP v. New York*, 413 U.S. 345, 365 (1973) ("Thus, the court where the action is pending must first be satisfied as to timeliness."). "Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances." *Id.* at 365–66. We have similarly held that "[w]hether a motion to intervene is timely is determined by considering all the circumstances of the case." *Mille Lacs*, 989 F.2d at 998. However, we consider several specific factors relevant to a determination of timeliness: "'[(1)] how far the litigation had progressed at the time of the motion for intervention, [(2)] the prospective intervenor's prior knowledge of the pending action, [(3)] the reason for the delay in seeking intervention, and [(4)] the likelihood of prejudice to the parties in the action.'" *Minn. Milk Producers Ass'n v. Glickman*, 153 F.3d 632, 646

-12-

(8th Cir. 1998) (quoting *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995)).

### 1. *Progress of Litigation*

Ritchie contends that the litigation has not progressed so far that intervention is impracticable. Ritchie notes that no answers or other responsive pleadings have been served, no discovery has occurred, no scheduling order has issued, and no trial is scheduled. Ritchie admits that much has happened regarding Polaroid in bankruptcy court but maintains that the receivership is in its infancy.

However, a review of the extensive record in this case shows that in fact the litigation progressed substantially between the initiation of these proceedings and Ritchie's second motion to intervene. The district court correctly outlined this progress in its order denying intervention:

> The scope of the Injunction was reviewed and clarified in November during a hearing in which Ritchie did not participate. Since then, the litigation proceedings have been frequent and fervent. Challenges to the U.S. Trustee's appointment of a PGW bankruptcy trustee have been contentious and ongoing. Polaroid has filed for Chapter 11 bankruptcy and has begun lien avoidance proceedings. Polaroid and interested parties have also been immersed for the past several months in the mammoth task of preparing for and proceeding with the auction of Polaroid's assets.

In total, various courts entered three receivership orders (in addition to the one the district court ordered); established and vacated an Illinois receivership as moot; denied Ritchie's first unrelated emergency motion to intervene to enforce the terms of the Illinois receivership; approved PCI, PGW, and related Petters's entities Chapter 11 bankruptcy petitions; appointed Kelley as Chapter 11 trustee for PGW and PCI; and denied Ritchie's multiple objections to Kelley's appointment as trustee. Additionally, Polaroid filed for Chapter 11 bankruptcy and filed an adversary

proceeding against Ritchie seeking to avoid Ritchie's liens as fraudulent transfers; sought bankruptcy court approval of bidding procedures for an auction; and had an auction of its assets scheduled. We have denied motions to intervene in cases with far less docket activity. *Cf. Ark. Elec. Energy Consumers*, 772 F.2d at 403 (denying motion for intervention filed 12 days after commencement of action where a hearing already had been held and temporary restraining order issued).

We find the progress of the litigation in this case to be substantial.

### 2. *Prior Knowledge of the Pending Action*

It is undisputed that Ritchie knew of the complete terms of the injunction since its inception, as evidenced by Ritchie's first motion to intervene filed one day after the imposition of the injunction. At that time, Ritchie neither questioned the validity of the injunction nor raised its current concerns when the district court broadened and clarified the scope of the injunction. At that time, Ritchie only sought to enforce the terms of the Illinois receivership and did not seek to invalidate the terms of the injunction. In addition, Ritchie has been a full and active participant in the PGW and Polaroid bankruptcy cases.

### 3. *Reason for the Delay*

Ritchie's primary argument on appeal is that changed circumstances justified its delay in filing its second motion to intervene. Ritchie identifies a conflict of interest in Kelley's responsibilities as the major change. Ritchie asserts that it initially tried to abide by the terms of the injunction and allowed Kelley to represent its interests, but when PGW's assets and liabilities were disclosed it became clear that Kelley had a conflict of interest; the only way Kelley could make a significant recovery for PCI's fraud victims was to defeat Ritchie's security interests in Polaroid and Petters Capital assets. Ritchie argues that when Kelley contested Ritchie's liens in bankruptcy court, Kelley showed that he had no intention of protecting Ritchie's interests.

Ritchie's argument has two flaws. First, while some circumstances certainly changed in the six months between issuance of the injunction and Ritchie's second motion to intervene, Ritchie does not identify any change in the quality or quantity of proof supporting the issuance of the injunction. Ritchie is now attempting to intervene for the sole purpose of challenging the terms, scope, and validity of the injunction. The evidence available to both parties when the injunction was issued has not changed, and Ritchie has had at least two opportunities to challenge that evidence.

At present, Ritchie's primary complaint with the injunction is that it includes PGW. However, Ritchie did not question the inclusion of PGW when it filed its first motion to intervene. Then, when the district court held another hearing to clarify, and in fact broaden, the scope of the injunction, Ritchie did not file a memorandum or argue at the motion hearing.

When a party had knowledge of all the facts—as Ritchie did— and failed to raise the issue when first presented with an opportunity to do so, subsequent intervention is untimely. *See United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 595–96 (2nd Cir. 1986) (holding that district court did not abuse its discretion in denying untimely motion to intervene when denial could be attributed to applicants' own failure to seek intervention when they first had reason to become aware that the issue would be considered by the court); *Minn. Milk Producers Assoc.*, 153 F.3d at 646 (affirming denial of intervention where district court found it unlikely that proposed intervener did not realize potential effects of the action on its interests until the "latest opportunity" and where a party would be prejudiced by having to respond to the intervener's arguments); *Nevilles v. EEOC*, 511 F.2d 303, 306 (8th Cir. 1975) (affirming denial of intervention after entry of judgment as untimely where the proposed interveners failed to prove that they did not know of the suit during its pendency).

Second, Ritchie's argument, at base, asks us to evaluate whether Kelley adequately represented Ritchie's interests, as Ritchie cites Kelley's impartiality as the "changed circumstance" that justifies intervention. Kelley's alleged partiality, while important to Ritchie, is not relevant to the sufficiency of the evidence presented in support of the injunction and therefore not relevant to Ritchie's current motion challenging the validity and scope of the injunction. The district court addressed Kelley's impartiality in a separate appeal when Kelley was appointed trustee of the PGW and PCI bankruptcy. The court affirmed the decision to install Kelley as bankruptcy trustee, an order that this court affirmed. *See Ritchie Special Credit Inv., Ltd. v. United States Trustee*, __ F.3d __, 2010 WL -------- (8th Cir. September 2, 2010). Thus, while Kelley's impartiality certainly has bearing on Ritchie's interests, that argument properly belonged in the appeal of the bankruptcy court's decision to make Kelley trustee of the PGW bankruptcy. That argument has now been disposed of. *See id.*

We realize that when the district court first entered the injunction, Polaroid was not in bankruptcy and Kelley (or Polaroid) was not actively seeking to invalidate Ritchie's liens. However, the question of Kelley's and Polaroid's actions in bankruptcy court are not relevant here. What is relevant is that Ritchie was aware of the full terms of the injunction at the time that it was entered and at least twice had an opportunity to object to the terms but chose to remain silent. We hold that Kelley's alleged partiality is not a sufficient reason to justify a six-month delay in seeking intervention.

### 4. *Likelihood of Prejudice*

We find, similarly, that this final factor weighs on the side of the government, as several entities and individuals will suffer prejudice if Ritchie is allowed to intervene at this juncture. The injunction has been in place and revisited for clarification. Litigation has ensued and continues over the appointment of the PGW trustee. Polaroid has filed for bankruptcy and has been engaged in a contentious and

-16-

ongoing sale of its assets. The numerous creditors involved in the PGW and Polaroid bankruptcy cases have invested substantial time and resources participating in those proceedings.

Conversely, there is no prejudice to Ritchie if it is not allowed to intervene because Ritchie still has a venue to contest (and protect) its claims in bankruptcy court. Ritchie is currently defending itself in the Polaroid bankruptcy adversarial action. Ritchie therefore has sufficient remedies in bankruptcy court which make intervention here unnecessary.

We acknowledge that allowing Ritchie to intervene gives it another potential avenue to enforce its security interests with Polaroid and Petters Capital. But a similar avenue of enforcement is already available to Ritchie in the bankruptcy courts—in proceedings in which it is actively participating. While intervention is often desirable, "the fact remains that a federal case is a limited affair, and not everyone with an opinion is invited to attend." *Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir. 1996).

After weighing the four relevant factors to an analysis of the timeliness of a motion to intervene, we affirm the district court's ruling. The litigation has made substantial progress, Ritchie knew about the injunction from its inception, Ritchie's justification for delay is insufficient, and denying the motion to intervene would not significantly prejudice Ritchie, while granting it would significantly prejudice the other parties.

B. *Due Process*

Ritchie next argues that by denying its second motion to intervene the district court violated Ritchie's due process rights. Ritchie asserts that the court deprived it of its property rights—specifically the Polaroid liens and the property in which Ritchie has a security interest—when it ordered the injunction and appointed Kelley as

receiver. Ritchie contends that Kelley has liquidated Ritchie's property without allowing Ritchie an opportunity to be heard.

The government responds by stating that the argument is being raised for the first time on appeal and therefore should not be heard. Additionally, the government contends that Ritchie has no settled property interest and that, if it does, its interests have not been impaired because adequate alternative remedies remain.

"Ordinarily, we do not consider an argument raised for the first time on appeal." *Pinnacle Pizza Co., Inc. v. Little Caesar Enter., Inc.*, 598 F.3d 970, 980 (8th Cir. 2010) (internal quotations and citation omitted). However, Ritchie did advance this argument to the district court, albeit briefly in one line in a memorandum of law in support of its second motion to intervene, stating: "Without a factual showing that PGW's assets are forfeitable as tainted assets . . . the restraining order violates the due process protections Ritchie is entitled to . . . ." Ritchie thus preserved its due process argument. However, we hold that the district court did not violate Ritchie's due process rights.

Due process requires adequate notice and procedures to contest the deprivation of property rights. *See, e.g., Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 569–70 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976). The fundamental requirement of due process is that a party shall be afforded the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotations and citation omitted). Additionally, the "right of a secured creditor to the value of its collateral is a property right protected by the Fifth Amendment." *In re Townley*, 256 B.R. 697, 700 (Bankr. D.N.J. 2000); *see also Lend Lease v. Briggs Transp. Co. (In re Briggs Transp. Co.)*, 780 F.2d 1339, 1342 (8th Cir. 1985) (protecting secured creditor's Fifth Amendment property rights).

-18-

Ritchie has a property right to any liens or security interests it might have in Polaroid or any other entity at issue and has a right to contest the deprivation of that property. However, Ritchie had an opportunity to contest the validity of the injunction—twice—and declined to do so, and while it may not have received the process it strategically desired, it has received the process it was constitutionally due.

Additionally, there has been no judicial determination, either in the district court or in the bankruptcy court, judging the validity of Ritchie's claims to Polaroid's property. Legally, until a court makes a determination on the validity of the liens and security interests, there has been no improper taking. "In a constitutional sense, this temporary suspension of lien enforcement breaches no essential property interest of the creditor and is not an unlawful taking under the Fifth Amendment." *Briggs*, 780 F.2d at 1342. Any argument that Ritchie has lost property as a result of the receivership is best made elsewhere.

Finally, as was the case with the previous issue, it is the due process Ritchie receives from the *bankruptcy court* that has the most relevance to Ritchie's argument here, because it is the bankruptcy court that will determine whether Ritchie's property is taken. The validity of Ritchie's secured property is still the subject of adversarial proceedings in the Polaroid bankruptcy proceedings.

## C. *Sufficient Evidence*

Finally, Ritchie requests that we review the district court's imposition of the injunction and find that the district court used an incorrect standard of proof when imposing the injunction. Ritchie contends that the district court used a "probable cause" burden, while it believes that the proper standard is "preponderance of the evidence."

The federal courts are split on the proper standard of proof required before a § 1345 injunction may issue, and our court has yet to decide its standard.[5] We need not consider this argument here, however, because we hold that Ritchie's motion to intervene was untimely and affirm the district court's denial of the motion.

### III. *Conclusion*

Accordingly, we affirm.

_____

---

[5]Some courts require the government to make a probable cause showing that a predicate crime under § 1345 is being committed. *See United States v. Payment Processing Center, LLC*, 461 F. Supp. 2d 319, 323 (E.D. Pa. 2006); *United States v. William Savran & Assoc.*, 755 F. Supp. 1165, 1184 (E.D.N.Y. 1991); *United States v. Weingold*, 844 F. Supp. 1560, 1573 (D.N.J. 1994). Other courts require a preponderance of the evidence standard. *See United States v. Brown*, 988 F.2d 658, 663 (6th Cir. 1993); *United States v. Hoffman*, 560 F. Supp. 2d 772, 777 (D. Minn. 2008); *United States v. Barnes*, 912 F. Supp. 1187, 1194 (N.D. Iowa 1996).