# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-3089

_____

In re: Wholesale Grocery Products Antitrust Litigation

------------------------------

Colella's Super Market, Inc.

*Movant - Appellant*

v.

SuperValu, Inc.; C&S Wholesale Grocers, Inc.

*Defendants - Appellees*

_____

No. 15-3174

_____

In re: Wholesale Grocery Products Antitrust Litigation

------------------------------

JFM Market, Inc.; MFJ Market, Inc.

*Plaintiffs - Appellants*

v.

SuperValu, Inc.

*Defendant - Appellee*

Appeals from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 17, 2016
Filed: March 1, 2017

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

Several retail grocers sued two large full-line wholesale grocers for violation of the Sherman Act, 15 U.S.C. §§ 1, et seq. The retailers sought to represent two putative classes, the Midwest class and the New England class. Each class had an Arbitration Subclass of retailers who had arbitration agreements with their respective wholesaler. The district court[1] dismissed the purported representatives of the Arbitration Subclasses from the case, and we reversed. See In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090, 2011 WL 9558054, at *1 (D. Minn. July 5, 2011) (unreported); King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Prods. Antitrust Litig.), 707 F.3d 917, 919 (8th Cir. 2013).

By then the district court had rejected the proposed Midwest and New England classes and granted the defendants' motion for summary judgment. See In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090, 2012 WL 3031085, at *8 (D. Minn. July 25, 2012) (unreported); In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090, 2013 WL 140285, at *1 (D. Minn. Jan. 11, 2013)

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

(unreported). The Midwest class representative appealed, but the New England class representative did not. We reversed, ordering the district court to consider a narrower Midwest class. See D & G, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Prods. Antitrust Litig.), 752 F.3d 728, 729, 736 (8th Cir. 2014). On remand, Colella's Super Market, Inc. (Colella) moved to intervene to join MFJ Market, Inc. and JFM Market, Inc. (collectively, Village Market), the New England Arbitration Subclass representative, in seeking to certify a narrower New England class. The district court denied the motion and announced it would not consider any new class of New England plaintiffs. Before us are Village Market's and Colella's consolidated appeals.[2]

## I. BACKGROUND

In 2003, wholesale grocery suppliers SuperValu, Inc. (SuperValu) and C&S Wholesale Grocers, Inc. (C&S) (collectively, appellees or wholesalers) entered into an Asset Exchange Agreement (AEA). C&S had recently purchased Fleming Companies, Inc.'s (Fleming) Midwest wholesale grocery business assets out of bankruptcy. In the AEA, C&S sold Fleming to SuperValu and C&S purchased SuperValu's New England business. Among the assets exchanged were supply agreements and arbitration agreements between each wholesaler and a number of its retail customers (the swap). The AEA also contained allegedly secret reciprocal non-compete provisions. Several retailers sued SuperValu and C&S, alleging the AEA

---

[2]We have appellate jurisdiction of Colella's appeal under 28 U.S.C. § 1291. See also Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad., 643 F.3d 1088, 1092 n.2 (8th Cir. 2011) ("The district court's order denying the . . . motion to intervene of right is immediately appealable as a final judgment."). We address our lack of authority to hear Village Market's appeal below. We need not decide whether the relevant time limit is jurisdictional or could have been forfeited, because in this case it was timely raised and preserved. Cf., e.g., Coco v. Inc. Vill. of Belle Terre, 448 F.3d 490, 491-92 (2d Cir. 2006) (per curiam) (reserving the question in similar circumstances).

violated the Sherman Act, 15 U.S.C. §§ 1, et seq., because it unlawfully allocated the New England market to C&S and the Midwest market to SuperValu.

The retailer-plaintiffs proposed two classes: Midwest SuperValu customers and New England C&S customers. DeLuca's Corporation (DeLuca) was the putative New England class representative and D&G, Inc. (D&G) was the putative Midwest class representative. Each class had an "Arbitration Subclass" of retailers who had arbitration agreements with their current wholesaler during the class period, and thus could only sue their pre-swap wholesaler. Village Market was the representative of the putative New England Arbitration Subclass.

In July 2011, the Arbitration Subclasses were dismissed from the case, the district court having determined the nonsignatory defendants (the pre-swap wholesalers) could each enforce against the plaintiffs the arbitration agreements they had assigned to the other. See In re Wholesale Grocery Prods. Antitrust Litig., 2011 WL 9558054, at *3, *6. In February 2013, we reversed. See In re Wholesale Grocery Prods. Antitrust Litig., 707 F.3d at 919.

By the time the Arbitration Subclasses were reinstated in February 2013, the class certification for the broader New England and Midwest classes had been denied, and the district court had granted summary judgment in favor of the defendants against D&G and DeLuca as individual plaintiffs (in July 2012 and January 2013, respectively). See In re Wholesale Grocery Prods. Antitrust Litig., 2012 WL 3031085, at *8; In re Wholesale Grocery Prods. Antitrust Litig., 2013 WL 140285, at *1. D&G appealed the summary judgment ruling, but DeLuca did not.

In May 2014, we affirmed the district court's denial of the Midwest class certification, but reversed and remanded the grant of summary judgment against D&G, and ordered the district court to consider a narrower class of Midwest plaintiffs (Champaign class). See In re Wholesale Grocery Prods. Antitrust Litig., 752 F.3d at

736. The case was remanded on August 26, 2014, after rehearing and rehearing en banc were denied.

The issues on remand were referred to a magistrate.[3] The issue of the Champaign class was pending, and an additional complaint had been filed by two putative classes of Midwest plaintiffs. Nemecek Markets, Inc. (Nemecek) proposed to represent a class of retailers serviced by SuperValu's Green Bay, Wisconsin, distribution center. Elkhorn-Lueptows, Inc., Jefferson Lueptows, Inc., and East Troy Lueptows, Inc. (collectively, Lueptows) proposed to represent a class of retailers serviced by SuperValu's Pleasant Prairie, Wisconsin, distribution center. On October 24, 2014, Colella moved to intervene to seek certification of a narrower New England class (Greater Boston class) in concert with Village Market, the New England Arbitration Subclass representative.

The magistrate judge permitted the Midwestern Champaign, Nemecek, and Lueptows plaintiffs to seek certification of their narrower classes. The magistrate judge denied Colella's motion to intervene. The distinguishing factor was that the district court's rejection of the broader New England class had never been appealed. While we remanded the question of the Midwest class certification after D&G appealed, there was no such order relating to the New England class. The magistrate judge noted "Defendants have litigated this matter without the involvement of New England Plaintiffs since February 2013 and without Colella's involvement since the litigation's inception." The magistrate judge decided Colella's motion was untimely, and even if it were timely, Colella would have no right to intervene. The magistrate judge explained "Colella's has not provided reason for unduly delaying its attempt to intervene. . . . If an unnamed class member wished to appeal the . . . denial [of class

---

[3]Meanwhile, the issue of the Arbitration Subclasses was back before the district court on remand. The district court rejected two alternative theories offered by the wholesalers in support of their motion to dismiss the Arbitration Subclasses, and the wholesalers appealed again. In a separate opinion, we affirmed.

certification], it would have been appropriate to seek intervention" within thirty days of the district court's order. Moreover, Colella was not entitled to intervene as a matter of right because it had no recognized interest in the litigation since the New England plaintiffs were out of the case. The magistrate judge reasoned Colella was free to file its own suit and would suffer "no preclusive effect" of the previous case since Colella was "a non-party and absent putative class member."

The parties presented to the district court objections to the magistrate judge's rulings. SuperValu was concerned the magistrate judge's order did not explicitly determine whether the New England plaintiffs would be permitted to seek certification of a narrower class and requested the district court clarify they could not. The district court ruled the magistrate judge "sufficiently and correctly determined that the New England Plaintiffs may not relitigate certification for a New England Class" and agreed with the magistrate judge that allowing Colella to intervene "'would give New England Plaintiffs an unwarranted second bite at the class-certification apple.'" The district court explained that the New England Arbitration Subclass's interests were protected by the broader New England class even while the subclass had been dismissed from the case and not yet reinstated. The district court also rejected Colella's and Village Market's argument that D&G represented the New England class's interests when it appealed the denial of certification as to the Midwest class. The district court accepted the magistrate judge's recommendation that the Midwest plaintiffs be permitted to seek certification of narrower classes.

Colella and Village Market (appellants) appeal, arguing they should not be bound by DeLuca's failure to appeal the denial of the New England class certification, because Village Market, as the Arbitration Subclass representative, had been dismissed from the case and was not reinstated by our ruling until after the larger class was denied certification.

-6-

## II.  DISCUSSION

### A.  Interlocutory Appeal on Class Certification

Except in a few special situations, we do not review district court rulings that are not yet final.  See 28 U.S.C. §§ 1291, 1292.  We "may," however, "permit an appeal from an order granting or denying class-action certification" under Federal Rule of Civil Procedure 23(f), if the would-be appellant petitions for permission "within 14 days after the order is entered."  Village Market filed such a petition after the district court entered its order refusing to consider certifying the Greater Boston class.[4]  That ruling did not purport to be "an order granting or denying class-action certification."  Fed. R. Civ. P. 23(f).  Nor did it function as one, as by "open[ing] up [a] class to individuals . . . beyond the more limited group [originally included]," Glover v. Standard Fed. Bank, 283 F.3d 953, 959 (8th Cir. 2002), or otherwise "'materially altering a previous order granting or denying class certification,'" Phillips v. Sheriff of Cook Cty., 828 F.3d 541, 559 (7th Cir. 2016) (quoting Matz v. Household Int'l Tax Reduction Inv. Plan, 687 F.3d 824, 826 (7th Cir. 2012)).  Rather, right or wrong, the district court emphatically left the status quo—no class certification for the New England plaintiffs—untouched (and untouchable): "the denial of a New England Class was not appealed and is final, and the New England Plaintiffs are not permitted to pursue class certification of a narrower New England Class."

We therefore have no discretion to hear Village Market's appeal under Rule 23(f), as our sister circuits have unanimously concluded in analogous situations.  See, e.g., id. at 559-60 (dismissing an attempted appeal because "the district court made no ruling that altered, in any meaningful sense, its earlier decision"); Nucor Corp. v. Brown, 760 F.3d 341, 343 (4th Cir. 2014) ("The district court's post-certification

_____

[4]We are not bound by the summary decision of an administrative panel of this court to grant Village Market's petition and docket its appeal.  See In re Rodriquez, 258 F.3d 757, 758-59 (8th Cir. 2001) (per curiam).

orders never altered the status of the [relevant] class and thus were not orders granting or denying certification as to that class."); Fleischman v. Albany Med. Ctr., 639 F.3d 28, 30-31 (2d Cir. 2011) (per curiam); In re DC Water & Sewer Auth., 561 F.3d 494, 496-97 (D.C. Cir. 2009); Gutierrez v. Johnson & Johnson, 523 F.3d 187, 194 (3d Cir. 2008); Jenkins v. BellSouth Corp., 491 F.3d 1288, 1291-92 (11th Cir. 2007); Carpenter v. Boeing Co., 456 F.3d 1183, 1191-92 (10th Cir. 2006); McNamara v. Felderhof, 410 F.3d 277, 281 (5th Cir. 2005). By its clear terms Rule 23(f) has no application in the absence of "an order granting or denying class-action certification," and the only such order here was the district court's original rejection of the New England class, which was entered many more than fourteen days before Village Market filed its petition.

That Village Market planned to seek consideration of the "much narrower" Greater Boston class, rather than "re-litigat[ion] [of] the same class of all New England grocers which was previously denied," as emphasized in its briefing, is no reason to treat the district court's later order as "granting or denying class-action certification." What matters is not what Village Market wanted, but what the district court actually did in the order at issue. Otherwise, if a dissatisfied party could reset the clock simply by coming up with a new way of defining a class and having the district court reject it, Rule 23(f)'s strict time limit for seeking interlocutory review of a class-certification decision would be so easily circumvented as to be practically meaningless. See, e.g., DC Water & Sewer Auth., 561 F.3d at 496-97 ("To hold otherwise would leave Rule 23(f)'s deadline toothless."); Carpenter, 456 F.3d at 1191 ("We recognize that Rule 23(c)(1)(C) permits the district court to alter or amend a certification decision. And parties may suggest such changes as the factual record and legal theories develop. All we are saying is that there can be no Rule 23(f) appeal from the denial of such a suggestion. An order that leaves class-action status unchanged from what was determined by a prior order is not an order 'granting or denying class action certification.'"); cf. Fleischman, 639 F.3d at 30-31 (dismissing an attempted appeal by plaintiffs who, like Village Market, unsuccessfully sought

certification of a new, narrower class after the district court first refused to certify a broad class on certain issues).

In reaching this conclusion, we express no view on the substantive concerns Village Market raises—particularly the significance of its not having been a party to the case while class-certification was litigated, the logic of making filing (and presumably losing) an appeal from the original denial of certification a prerequisite to trying to cure the defects of the overbroad New England class by proposing a narrower alternative, and the propriety of foreclosing any further consideration of any New England class regardless of how the case develops. Nor do we opine on the availability of other forms of prejudgment relief in light of Village Market's consistent and exclusive reliance on Rule 23(f) as the vehicle for its challenge here to the district court's ruling. But we must dismiss this appeal.

## B.    Intervention

The district court's ruling on the timeliness of a motion to intervene is reviewed for abuse of discretion. See Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad., 643 F.3d 1088, 1093 (8th Cir. 2011). In determining the timeliness of a motion to intervene, "the district court should specifically consider: (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." Id. at 1094.

We first consider the progression of the litigation. The magistrate judge observed this litigation was fairly advanced because "[t]he parties have briefed and argued motions to dismiss, motions for summary judgment, and motions for class certification; they have engaged in extensive discovery to support those motions; and they have twice argued this case before the Eighth Circuit." Cf. WaterLegacy v. EPA, 300 F.R.D. 332, 343 (D. Minn. 2014) (highlighting "the parties have engaged

-9-

in no discovery or motion practice and no proceedings regarding the merits of the litigation have occurred"). This is not necessarily determinative, as an intervention motion is not necessarily untimely even where the "litigation is nearly wrapped up" or where the motion is "postjudgment or even post-appeal." Tweedle v. State Farm Fire & Cas. Co., 527 F.3d 664, 671 (8th Cir. 2008).

Second, we consider Colella's knowledge of the litigation, which the parties dispute. This factor often weighs heavily in cases where the would-be intervenor was aware of the litigation for a significant period of time before attempting to intervene. See, e.g., U.S. Bank Nat'l Ass'n v. State Farm Fire & Cas. Co., 765 F.3d 867, 869-70 (8th Cir. 2014) (noting would-be intervenor knew of litigation for twenty-one months before filing its motion); Tarek ibn Ziyad Acad., 643 F.3d at 1094 (observing potential intervenors knew of suit for fourteen months before filing motion).

Here, the district court observed that "Colella's *counsel* has participated in this case since its inception, having served as counsel for DeLuca's," but counsel's knowledge before Colella became a client is not relevant. (Emphasis added). And the magistrate judge proceeded under the impression that "[t]he parties agree that Colella's had knowledge of this litigation long before it moved to intervene." Colella's president signed an affidavit averring she "only learned of the existence of the case in October, 2014." It appears the district court did not consider this affidavit. Although we are concerned by this point, appellants in their opening brief do not deny Colella knew about the litigation, and they only explicitly challenge the district court's failure to address the affidavit in their reply brief. See, e.g., Neb. State Legislative Bd., United Transp. Union v. Slater, 245 F.3d 656, 658 & n.3 (8th Cir. 2001) ("'[C]laims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time on appeal in a reply brief.'" (quoting Mahaney v. Warren County, 206 F.3d 770, 771 n.2 (8th Cir. 2000))).

The third factor, the reason for the delay in seeking intervention, is only applicable to the extent Colella was in fact aware of this litigation before it attempted to intervene, as appellees assert and the district court concluded. Even some of appellants' arguments with respect to this prong of the analysis seem to accept the premise that Colella was long aware of the litigation. Colella moved to intervene on October 24, 2014, and appellants assert it could not reasonably have done so sooner. The district court agreed the pending appeal prevented Colella from pursuing intervention between February 2013 and August 2014, but decided "Colella's fail[ed] to provide a convincing reason for not intervening before February 2013."

Appellants explain Colella had no reason "to intervene before the [summary judgment order] went up on appeal in February, 2013. To the contrary, until the case was dismissed, [Colella's] rights were fully protected by the existing class action in which New England representatives sought to represent all New England retail grocers." (Citation omitted). But appellants do not adequately explain why Colella thought its interests were protected from July/August 2012 to February 2013.[5] The New England class certification was denied in July 2012, and in August 2012, D&G asked for permission to certify a narrower class of Midwest plaintiffs. By August 2012, the district court explained, "there was absolutely no doubt that D&G was not serving as class plaintiff for retailers in New England." Appellants point out DeLuca participated in the summary judgment proceedings, but once class certification had been denied, DeLuca was acting as an individual plaintiff. As appellees argue, "[o]nce the district court denied certification, 'the putative class members had no reason to assume that their rights were being protected. . . . [T]hey were notified that they were no longer parties to the suit and they should have realized that they were

_____

[5]Colella was not a member of the New England Arbitration Subclass, which would have prevented it from moving to intervene until our February 2013 opinion reinstated the Arbitration Subclasses.

-11-

obligated to file individual suits or intervene in the action.'"[6] (Quoting <u>Taylor v. United Parcel Serv., Inc.</u>, 554 F.3d 510, 520 (5th Cir. 2008)).

Fourth, we consider the potential prejudice to appellees if Colella is permitted to intervene, a factor the district court concluded "disfavors intervention." According to appellants, "[a]dding Colella's to the litigation will entail comparatively trivial time and expense" because "the Defendants have all of Colella's records of past dealings, including full transactional records" and "Colella's will provide no new theories to the case." <u>Cf.</u> <u>Tarek ibn Ziyad Acad.</u>, 643 F.3d at 1094-95 (explaining introduction of a new legal theory could support a finding of prejudice). Colella points out it "is bound by the prior rulings and discovery," including the future discovery schedule, "so this Court's and the District Court's rulings on summary judgment and discovery do not have to be revisited."

Ultimately, we are unpersuaded by appellants' argument that the district court abused its discretion in determining Colella's motion to intervene was untimely. Although we are concerned by the district court not explicitly addressing Colella's affidavit concerning its knowledge of the litigation, Colella's incomplete explanation about its knowledge of the litigation and its reason for any delay leaves us with more questions than answers. We affirm the district court's denial of Colella's motion to intervene as not an abuse of discretion.

---

[6]Appellees insist "it [also] borders on preposterous for Colella's counsel, who also represented DeLuca's, to argue that he was unaware until after the appellate deadline expired whether his own client would continue to pursue class certification or appeal from the judgment against it." Also questionable is appellants' insistence that D&G's notice of appeal from the summary judgment order did not "sen[d] a clear signal that [Colella's] legitimate interests on appeal—those relating to summary judgment—were not protected." Appellants contend D&G's counsel was appointed as lead counsel for the entire case. There were three co-lead counsel, which included D&G's counsel and DeLuca's counsel.

-12-

## III. CONCLUSION

Village Market's appeal is dismissed. The judgment of the district court is affirmed.

COLLOTON, Circuit Judge, concurring in the judgment.

I concur in the dismissal of Village Market's appeal for lack of jurisdiction. Alternatively, even treating Village Market's appeal as a petition for writ of mandamus, I would deny relief. For the reasons stated in the separate opinion in No. 15-1786, *Millennium Operations, Inc. v. SuperValu, Inc.*, Village Market should be compelled to arbitrate its dispute with SuperValu pursuant to the arbitration agreement between the parties. The district court thus did not err in declining to permit Village Market to seek certification of a class in federal court.

Although I doubt that the motion of Colella's Supermarket, Inc., to intervene was untimely, once Village Market is compelled to arbitrate its dispute with SuperValu, Colella's is not entitled to intervene in this action. With Village Market directed to arbitrate, Colella's has no interest relating to the transaction which is the subject of the remaining action, and disposition of the remaining action would not impair or impede Colella's ability to protect its interest. *See* Fed. R. Civ. P. 24(a). Colella's is free to pursue its claim against SuperValu in a separate action.

For these reasons, I concur in the judgment.

_____