# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2220

_____

United Food and Commercial Workers Union, Local No. 663; United Food and Commercial Workers Union, Local No. 2; United Food and Commercial Workers Union, AFL-CIO, CLC; United Food and Commercial Workers Union, Local No. 222, formerly known as United Food and Commercial Workers Union, Local No. 440

*Plaintiffs - Appellees*

v.

United States Department of Agriculture

*Defendant - Appellee*

------------------------------

Seaboard Foods LLC

*Movant*

Quality Pork Processors, Inc.; WholeStone Farms Cooperative, Inc.; Clemens Food Group, LLC

*Movants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 16, 2022
Filed: June 7, 2022
_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.
_____

BENTON, Circuit Judge.

The United States Department of Agriculture ("USDA") adopted a rule eliminating processing-line-speed limits in pork plants. Plaintiffs, unions representing pork-processing-plant workers, sued to vacate the rule as arbitrary and capricious. The district court[1] granted summary judgment for Plaintiffs and vacated the rule. Two months later, Appellants—pork-processing companies affected by the rule and vacatur—moved to intervene. The district court denied the motion as untimely, noting that Appellants had participated in the summary judgment briefing eight months earlier. Having jurisdiction under 28 U.S.C. § 1291, this Court affirms.

I.

Under the Federal Meat Inspection Act, 21 U.S.C. § 604, Food Safety and Inspection Service ("FSIS") inspectors with the USDA monitor pork-processing plants, examining hogs before and after slaughter. FSIS regulates the speed of evisceration-processing lines to ensure adequate post-mortem inspections. Historically, inspectors directly assessed each hog, separating normal and abnormal carcasses and parts, which required a rule limiting the speed of evisceration lines. *See* **9 C.F.R. § 310.1(b)(3), tbl.4** (listing swine "[m]aximum inspection rates").

Over 20 years ago, USDA promulgated the Pathogen Reduction/Hazard Analysis and Critical Control Points ("HACCP") final rule. That rule updated its approach to swine inspection to better combat foodborne pathogens, including

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

salmonella and E. coli. *See* **61 Fed. Reg. 38,806** (July 25, 1996). USDA then launched the HACCP-Based Inspections Models ("HIMP") program. It granted waivers that removed the limits on line speeds for some plants, and allowed workers to separate abnormal carcasses and parts themselves under set standards, with inspectors verifying compliance and inspecting randomly sampled carcasses. *See generally* **83 Fed. Reg. 4780, 4780, 4783-84** (Feb. 1, 2018) (reviewing history of program); ***Am. Fed'n of Gov't Emps., AFL-CIO v. Veneman***, 284 F.3d 125, 126-27 (D.C. Cir. 2002) (same). Only five plants participated in HIMP, including those of appellants Clemens Food Group, LLC ("Clemens"), Wholestone Farms Cooperative, Inc. ("Wholestone"), and Quality Pork Processors, Inc. ("QPP").

In October 2019, USDA promulgated the optional New Swine Inspection System ("NSIS") rule, which supplanted much of HIMP and allowed plant workers to do much of the carcass-separating work and inspection. *See* **84 Fed. Reg. 52,300** (Oct. 1, 2019). For plants opting into NSIS, USDA eliminated the line-speed limits of the traditional, non-HIMP system. According to the final NSIS rule, the existing HIMP line-speed waivers, including those of Appellants, would end. Those waivers ended on March 30, 2020, with Appellants' plants converting to NSIS then.

Plaintiffs, labor unions at pork plants, sued USDA. They challenged, among other things, the part of the NSIS rule that eliminated line-speed limits. Plaintiffs urged the district court to vacate the final rule, arguing it failed to consider worker safety. Their proposed relief did not include reverting to the HIMP waiver system. Thus, if the district court granted the relief sought, then the original, pre-HIMP line-speed limits would return for all plants.

In July 2020, Plaintiffs and USDA filed cross-motions for summary judgment. USDA urged that if the district court found for Plaintiffs on the merits, the proper relief was remand to USDA without vacating the NSIS rule. USDA argued that vacatur would disrupt plants that opted into NSIS, causing them to "incur significant costs to revert to the traditional inspection system." USDA argued, alternatively,

that the court should vacate only the part of the NSIS rule eliminating line-speed limits. It did not urge reinstatement of the HIMP waivers.

In August 2020, the North American Meat Institute—an industry group including all Appellants—and the National Pork Producers Council filed an amicus brief arguing the court should "uphold the NSIS rule." The amici argued full vacatur would be "disruptive" and all but one of the plants that opted into NSIS had "operated without line speeds for many years under HIMP or a similar waiver." In support, the amici filed declarations about the expected impact of vacatur from executives at appellants Clemens and Wholestone. The amici did not argue that, if the court vacated the NSIS rule, it should reinstate the HIMP waiver system.

On March 31, 2021, the district court granted summary judgment for Plaintiffs on the NSIS rule, finding the elimination of line speeds without considering worker safety was arbitrary and capricious. The court found severable the line-speed part of the rule, vacated it, and stayed entry of judgment 90 days for "the agency to decide how to proceed in light of [its] opinion and [to] give regulated entities time to prepare for any operational change."

On May 7, 2021—eight months after Clemens and Wholestone executives participated in the amicus brief—Appellants moved to intervene. They argued they had converted their plants to comply with NSIS. They sought to intervene to ask the district court to clarify that vacatur reinstated their prior HIMP waivers, and to stay the order pending appeal if the court did not issue a clarification.

The district court denied intervention as untimely, reasoning that it came too late; the Appellants knew about the litigation for a long period; delay based on surprise at the judgment was unwarranted because Plaintiffs had always sought vacatur; and intervention would prejudice USDA's efforts to revise its policies. Both the district court and this Court denied a stay of judgment pending appeal.

USDA advised plants that the original line-speed limits would be reinstated at the end of June 2021 when the court's stay of judgment ended. The district court entered judgment on June 30, 2021.

In November 2021, USDA invited plants to apply for a temporary permit to increase line-speeds. In early March 2022, USDA approved permits for three of the four plants operated by Clemens, Wholestone, and QPP. In April 2022, USDA approved a permit for the one remaining plant, operated by Clemens.

II.

When a district court denies a motion to intervene as untimely, this Court reviews for abuse of discretion. *Smith v. SEECO, Inc.*, 922 F.3d 398, 405 (8th Cir. 2019).

Federal Rule of Civil Procedure 24(a)(2) allows an interested party to intervene in a suit "[o]n a timely motion." **Fed. R. Civ. P. 24(a)(2)**. "[T]imeliness of a motion to intervene is a threshold issue." *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010) ("*Ritchie*"). To assess timeliness, courts consider four factors: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *Smith*, 922 F.3d at 405 (quotations omitted).

Turning to the first factor: the litigation has progressed to the end-game. Although no one factor is dispositive, *Ritchie*, 620 F.3d at 832, this Court disfavors intervention late in litigation. *See, e.g.*, *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995) (affirming denial of intervention where movant "monitored" the suit "for nearly two years and then moved to intervene" only when the parties settled shortly before trial). Appellants sought to intervene over a month after the court entered summary judgment and the full vacatur Plaintiffs-Appellees

had sought. This is a "ninth-inning-with-two-outs intervention attempt." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1066 (8th Cir. 2013) (quotations omitted) (affirming denial of motion to intervene). And this court "ha[s] denied motions to intervene in cases with far less docket activity." *Ritchie*, 620 F.3d at 832 (denying motion to intervene in bankruptcy proceeding and citing *Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985), which "den[ied] [a] motion for intervention filed 12 days after commencement of action where a hearing already had been held and temporary restraining order issued"). Given the extremely late time when Appellants sought to intervene, this factor weighs strongly against intervention.

Turning to the second factor: Appellants had knowledge of the case and proposed relief well before the court entered summary judgment. This factor "weighs heavily . . . where the would-be intervenor was aware of the litigation for a significant period of time before attempting to intervene." *In re Wholesale Grocery Prod. Antitrust Litig.*, 849 F.3d 761, 767 (8th Cir. 2017). The relief Appellants seek—a return to the HIMP waiver system—was an outcome *no party* advocated at summary judgment, so Appellants' interests were never advanced by an actual party. Even *the amici* did not advocate reverting to the HIMP waivers. Appellants knew the risk of full vacatur with reversion to the pre-HIMP system when they filed their amicus brief and declarations—long before they sought to intervene. No Appellant avers that it lacked knowledge of the case or of the summary judgment motions. Thus, the second factor weighs heavily against Appellants. *See id.*

*Cameron v. EMW Women's Surgical Center, P.S.C.*, 142 S. Ct. 1002 (2022), reinforces this conclusion. A district court there entered judgment against the Kentucky Secretary for Health and Family Services, enjoining a Kentucky law. The Secretary appealed, and the Sixth Circuit affirmed—but then the Secretary did not seek further review. *Id.* at 1008. The Kentucky Attorney General then moved to intervene. *Id.* The Sixth Circuit denied the motion, and the Attorney General appealed. *Id.* The Supreme Court ruled that the Attorney General should be allowed to intervene, stating, "[T]he most important circumstance relating to timeliness is

that the attorney general sought to intervene as soon as it became clear that [Kentucky's] interests would no longer be protected by the parties in the case." *Id.* at 1012. Until the Secretary declined to seek further review of the Sixth Circuit's decision, the Secretary adequately protected Kentucky's interests and thus the Kentucky Attorney General's decision not to intervene earlier was justified. *Id.* Moreover, the Attorney General "sought to intervene two days after learning that the secretary would not continue to" seek review. *Id.* That two-day interval is a far cry from the eight-month-long period here. Appellants knew no party was seeking reinstatement of the HIMP waivers if the NSIS rule were vacated, so no party was protecting Appellants' interests.

Turning to the third factor: Appellants' reason for delay is unpersuasive. Their proffered reason—that USDA's interests in defending NSIS aligned with theirs—fails because, as discussed above, USDA's interests did not align: Appellants' core concern is having the district court return them to the HIMP waiver system. But neither Plaintiffs nor USDA ever pursued this. Because Appellants' justification is insufficient, this factor also favors denying intervention. *See* ***Ritchie***, 620 F.3d at 833-34 (affirming denial of intervention as untimely where appellant did "not identify any change" relevant to intervention "in the six months between issuance" of an injunction and appellant's motion to intervene, so his "justification for delay [wa]s insufficient"); *id.* at 833 ("When a party had knowledge of all the facts—as [appellant] did—and failed to raise the issue when first presented with an opportunity to do so, subsequent intervention is untimely."); ***Wholesale Grocery***, 849 F.3d at 767-68 (affirming denial of intervention as untimely where "appellants do not adequately explain why [one] thought its interests were protected" before motion to intervene, leaving the court "with more questions than answers" about the "reason for any delay"); ***Nevilles v. EEOC***, 511 F.2d 303, 306 (8th Cir. 1975) (affirming denial of intervention after entry of judgment as untimely where proposed intervenors did not show they lacked "knowledge of the suit during its pendency which would justify the delay in filing their motion").

Turning to the final factor: USDA argued the delayed intervention would frustrate its ability to manage the food safety system and implement new regulation. The district court agreed, and Appellants have not meaningfully contested its conclusion. Further, Appellants appear to suffer little prejudice now that all four of their relevant plants have received line-speed permits. This factor also weighs against intervention. *See **Ritchie***, 620 F.3d at 834 (affirming denial of intervention motion as untimely where denying it "would not significantly prejudice [proposed intervenor], while granting it would significantly prejudice the other parties"); *see also **Wholesale Grocery***, 849 F.3d at 768 (affirming denial of intervention motion as untimely without deciding how prejudice weighed).

In sum, all factors weigh in favor of denying the motion to intervene. This Court affirms the district court's denial of that motion.

* * * * * * *

The judgment is affirmed.

_____